WEBER, Administratrix, Respondent, vs. BARRETT and others, Appellants.

*April 17—May 20, 1941.*

For the appellants there was a brief by *Bouck, Hilton & Dempsey* of Oshkosh, and oral argument by *Ray C. Dempsey*.

For the respondent there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *A. W. Parnell.*

ROSENBERRY, C. J.    At the time of the accident the deceased Joseph Weber was thirty-eight years of age and employed as a cook at a country club near Appleton.  He resided with the plaintiff on the south side of Prospect avenue, known as 745 West Prospect avenue.  This house is located on the southeast corner intersection of West Prospect avenue and Locust street.  On the east side of the house is a twenty-four-inch walk leading from the sidewalk south to the entrance to the Weber apartment, the exit being on the east side of the apartment.  The permissible speed on West Prospect avenue was twenty-five miles per hour.  The night was clear, the pavement dry, there was an arc light located at the intersection of Locust street and West Prospect avenue.  The deceased had evidently been visiting taverns at least from 7 o'clock in the evening until about 11 o'clock.  The deceased was picked up by Gray, a cabdriver, and at his request, Gray took him to a point opposite the place where the deceased resided.  As Gray approached and brought his car to a stop where the deceased was discharged from the cab, the defendant Barrett, operating another cab owned by the same company, was traveling east on West Prospect avenue approaching the intersection of Locust street and West Prospect avenue.  Barrett observed the Gray car and continued easterly at a speed of twenty-five miles per hour.  His headlights were in first-class order, the brakes were in excellent mechanical condition, and the motor had a governor limiting its speed to twenty-five miles an hour.  As he was traveling

somewhat south of the center line of West Prospect avenue he reached a point about fifty feet east of the east crosswalk of Locust street when he observed Weber running across the street from north to south. Barrett testifies that when he first saw Weber he was about three feet north of the center line of West Prospect avenue running south. Upon seeing Weber in that position Barrett applied the brakes and attempted to turn to the north (his left) to avoid striking Weber. Barrett testifies that the tragedy occurred in what he calls a split second. The left front wheel of Barrett's cab was on or a little over the yellow line at the time of the impact. Weber was about four or five feet south of the yellow line and the impact between the automobile and Weber's body took place on the right corner of the bumper and the right-hand side of the grill. The right front fender was not bent. There were no marks on it, and the headlight was intact.

The force of the blow threw Weber a distance of twelve or fourteen feet, his head striking the curb, his right leg was broken, and he sustained a serious fracture of the skull from which he subsequently died. Weber's cap was found north of the walk leading to his apartment about three feet from the curb. When Barrett applied the brakes, the cab left tire or skid marks on the highway which were about twenty feet in length, and went from the south half of West Prospect avenue toward the center of the street. Photographs were taken the next morning showing the location of the skid marks. Other than Barrett there were no witnesses to the accident. When the cab stopped after the accident it was facing somewhat northeasterly and the greater part of it was north of the center line. There is no substantial dispute in the evidence.

The trial court was of the view that because Barrett had noticed the Gray cab he was under a duty to do something from which the jury might find he was guilty of negligence. The trial court was also of the view that the deceased had the

benefit of the presumption that he was in the exercise of due care for his own safety, this despite the fact that the evidence shows he was running across the street ahead of an automobile with lights burning and not at a crosswalk. The court also said that the jury were entitled to disbelieve the testimony of the defendant. If they disbelieved the defendant Barrett's testimony then there was no evidence tending in any way to charge Barrett with negligence.

It seems that the case was tried upon the theory that *De Goey v. Hermsen* (1939), 233 Wis. 69, 74, 288 N. W. 770, controlled. That was also a case of "jaywalking." In that case there was a clear conflict in the evidence as to speed at which the defendant driver was traveling. This court held that the plaintiff was guilty of negligence as a matter of law in failing to yield the right of way as required by sec. 85.44 (4), Stats. In the course of the opinion the court said:

"We agree with plaintiff that it is not negligence as a matter of law for a pedestrian to cross a street at a point other than a crosswalk. It is also true that a person so crossing the street who has passed the center of the street does not ordinarily have any problems with respect to yielding the right of way to drivers using the half of the highway that she has passed."

This is a perfectly correct statement of the law, but in some way the trial court deduced from this the proposition that in this case the deceased was under no duty with respect to yielding the right of way until he reached the center of the street; that he was presumed to be in the exercise of ordinary care and therefore was not guilty of contributory negligence. This begs the whole question. He was running according to the testimony of Barrett, which is sustained by all of the physical facts in the case. He clearly violated his duty to yield the right of way. He was struck while he was on Barrett's right side of the highway and apparently took no pre-

cautions for his own safety. While the jury found that he was not so intoxicated as to be incapable of properly caring for himself, it is quite evident he was intoxicated enough to become confused and not capable of making a correct observation. It is as clear as anything can be that the sole proximate cause of this accident was the failure of the deceased to yield the right of way. We find no evidence to sustain the finding of the jury that the defendant Barrett was guilty of any want of ordinary care with respect to speed, lookout, or control.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiff's complaint.