LUEDTKE, Appellant, v. SHEDIVY and another,
Respondents.

*No. 250. Argued March 31, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 220.)

112

For the appellant there was a brief by *Kelley, Weber & Bolte* and *Richard J. Weber,* all of Wausàu, and oral argument by *Richard J. Weber.*

For the respondents there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Roger Rouse* and *W. Thomas Terwilliger* of counsel, all of Wausau, and oral argument by *Mr. Rouse* and *Mr. W. Thomas Terwilliger.*

HANLEY, J. The following issues are presented on this appeal: (1) Were the results of the blood test properly admitted; (2) was the emergency instruction proper;

(3) was the stopping, parking and leaving a vehicle on a highway instruction proper; and (4) was the award of damages so grossly inadequate as to be the result of passion, prejudice and perversity?

*Admissibility of blood test.*

The appellant argues that results of a test showing the alcohol content of the deceased's blood should not have been admitted into evidence at the trial. She contends that such admission is barred by sec. 979.20, Stats. [1]

Sec. 979.20 (1), Stats., states that all persons learning of a death which occurred under the following circumstances must report it to the coroner or other specified authorities. The "following circumstances" referred to above provide in part:

"(f) All deaths following accidents, whether the injury is or is not the primary cause of death."

Sec. 979.20 (2), Stats., provides a penalty for failure to comply with the section, and finally, sec. 979.20 (3) provides:

"(3) In all cases of death reportable under sub. (1) where an autopsy is not performed, the coroner shall have the authority to take for analysis any and all specimens, body fluids and any other material which will assist the coroner in learning and determining the cause of death. The specimens, body fluids and other material taken by the coroner under this subsection shall not be admissible in evidence in any civil action *against the deceased or his estate,* as the result of any act of the deceased." (Emphasis supplied.)

The respondents argue that sec. 979.20, Stats., is not applicable here; and they contend that the blood sample

[1] This section has been renumbered. At the time of trial it was sec. 966.20, Stats. 1967, and it is referred to in both briefs as sec. 966.20.

was drawn pursuant to sec. 346.71 (2), and that it was admissible under sec. 885.235.

Sec. 346.71 (2), Stats., provides in part as follows:

"(2) In cases of death involving a motor vehicle in which the decedent was the operator of a motor vehicle or a pedestrian 16 years of age or older and who died within 6 hours of the time of the accident, the coroner shall require that a blood specimen of at least 10 cc. be withdrawn from the body of the decedent within 12 hours after his death, by the coroner or by a physician so designated by the coroner or by a qualified person at the direction of such physician. All morticians shall obtain a release from the coroner prior to proceeding with embalming any body coming under the scope of this section. The blood so drawn shall be forwarded to a laboratory approved by the state board of health for analysis of the alcoholic content of such blood specimen. . . ."

Sec. 885.235 (1), Stats., provides as follows:

"(1) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant when operating or driving a motor vehicle, or while handling a firearm, evidence of the amount of alcohol in such person's blood at the time in question as shown by chemical analysis of a sample of his breath, blood or urine is admissible on the issue of whether he was under the influence of an intoxicant if such sample was taken within 2 hours after the event to be proved. Such chemical analysis shall be given effect as follows without requiring any expert testimony as to its effect:

"(a) The fact that the analysis shows that there was five-hundredths of one per cent or less by weight of alcohol in the person's blood is prima facie evidence that he was not under the influence of an intoxicant;

"(b) The fact that the analysis shows that there was more than five-hundredths but less than fifteen-hundredths of one per cent by weight of alcohol in the person's blood is relevant evidence on the issue of intoxication but is not to be given any prima facie effect;

"(c) The fact that the analysis shows that there was fifteen-hundredths of one per cent or more by weight of

alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants."

With the above statutes in mind, we turn to the question of which provision governs the admissibility of the blood sample test results in this case.

Sec. 979.20 (3), Stats., provides that the coroner may take blood samples which will assist him in "determining the cause of death." In this case, the coroner testified that he had already determined the cause of death prior to taking the blood sample. Therefore, the sample was not taken for the purpose authorized in sec. 979.20 (3). In addition, sec. 979.20 makes no mention of sending the sample to the division of motor vehicles, but that is what the coroner did with it in this case. These facts clearly indicate that the sample was taken pursuant to sec. 346.71 (2), not sec. 979.20.

Sec. 346.71 (2), Stats., specifically provides for a sample to be taken when the deceased was operating a motor vehicle and further provides that such sample be sent to the division of motor vehicles for analysis. The coroner followed the above procedure in this case, and sec. 979.20 was not applicable. Moreover, even if sec. 979.20 were applicable here, it would not prohibit the admission of the test results because such results are inadmissible in an action "against the deceased or his estate." No one in this case has brought an action against the estate of the deceased.

Appellant points out that the results of the tests are being used as a defense in the action. That is—they are being used against the deceased. This is claimed to be equivalent to a "civil action against the deceased or his estate." We do not agree. In no way can the language of sec. 979.20 (3), Stats., be interpreted to mean that af-

firmative defenses are the same as a "civil action against the deceased."

As an alternative argument, appellant contends that if sec. 346.71 (2), Stats., is the applicable section, then the test results are still barred from being admitted as evidence because sec. 346.71 (2) provides that the state board of health shall keep a record of blood sample test results "to be used for statistical purposes only." Appellant contends that the words "for statistical purposes only" prohibit the admission of test results in automobile accident litigation. That argument would be plausible if there were no other relevant statute in this state. Appellant fails to discuss at all the function of sec. 885.235, which specifically provides that chemical tests for intoxication are admissible "In any action" where it is material to prove a person operating a motor vehicle was intoxicated.

If there is a conflict between sec. 346.71 (2), Stats.— "for statistical purposes only"—and sec. 885.235, it is resolved by application of the rule that where two statutes relating to the same subject matter are in apparent conflict, the more specific statute controls over the more general. In this instance, the subject matter of the two statutes is chemical tests for intoxication. Sec. 346.71 (1) and (2) provides a general and comprehensive plan for the compilation of statistical data on the role played by alcohol in highway deaths. Sec. 885.235 deals with the much more specific problem of when and under what circumstances the results of chemical tests may be admitted as evidence in a lawsuit. Dealing as it does with a more specific aspect of the general subject matter, we find that sec. 885.235 governs in this case.

Appellant also challenges the admissibility of the blood sample test results on the ground that no proper founda-

tion for this evidence was laid because respondents did not adequately show the chain of custody of this sample.

At trial, the coroner, William O'Connor, testified that after putting the sample in the vial, he sealed the vial and pasted a label on the vial showing the name and address of the deceased and the day and time when the sample was taken. That information was: Donald Luedtke, Route 2, Wausau. August 31, 1967, 12:30 a. m.[2] He then mailed the sample to the division of motor vehicles in Madison.

The next defense witness was the chemist from the division of motor vehicles in Madison who testified that on September 1, 1967, he received at his laboratory in Madison a blood sample from Coroner William O'Connor. The chemist stated that he first checked the seal to determine that it was unbroken and then he copied the information on the label in his log book. That information was: "Donald Luedtke, Route 2, Wausau. The time of the sample was August 31 at 12:30 A. M." On the basis of the above facts, the appellant argues that an insufficient foundation was laid for admission of the test results because there is no evidence to show delivery of the sample to Madison and no evidence as to where the sample was from the time it was taken until the time the chemist analyzed it. This argument is really specious since the sample was quite obviously in the mail[3] from the time it was taken until the time it was

---

[2] At trial the coroner stated that he took the sample at 11:30 p. m., on August 30th, but this is an obvious error on his part because the accident had not even occurred until 11:20 p. m., on August 30th.

[3] Items deposited in the mail are presumed to have been received by the addressee. *Reeves v. Midland Casualty Co.* (1920), 170 Wis. 370, 174 N. W. 475, 174 N. W. 959; *Olson v. Sentry Ins. Co.* (1968), 38 Wis. 2d 175, 156 N. W. 2d 429. When the addressee acknowledges receipt of the item, the proposition that it was received changes from a presumption to a verity.

analyzed. The showing of delivery to Madison was established by the chemist's testimony that he received it in his laboratory.

## Emergency instruction.

Appellant contends the trial court erred in giving the emergency instruction.

The emergency instruction is proper when three conditions are met:

"(1) The party seeking its benefits must be free from the negligence which contributed to the creation of the emergency; (2) the time element in which action is required must be short enough to preclude the deliberate and intelligent choice of action; and (3) the element of negligence inquired into must concern management and control. . . ." *Edeler v. O'Brien* (1968), 38 Wis. 2d 691, 698, 158 N. W. 2d 301.

In some cases it may be so clear that the three conditions are satisfied that the trial court may apply the emergency doctrine as a matter of law, thereby absolving the party charged from all negligence as to management and control. *Geis v. Hirth* (1966), 32 Wis. 2d 580, 587, 146 N. W. 2d 459. In other cases, it is up to the jury to decide if the two conditions described were actually present at the time of the accident.

In this case there clearly was evidence which, if the jury chose to believe it, would give rise to the application of the emergency doctrine. The evidence showed that the defendant was proceeding within the speed limit and in his own lane of travel when he was suddenly confronted with another vehicle positioned crosswise in his own lane of travel. There was evidence from which the jury could have reasonably inferred that the other vehicle was parked and unlighted. On these facts we can-

not conclude that the trial court erred in giving the emergency instruction.

*Instruction on parking and stopping a vehicle on a highway.*

The appellant contends there was no credible evidence in this case that the deceased's vehicle was parked or stopped on a highway. Therefore, the instruction bearing upon those questions was improper. We do not agree.

In this case, the position of the deceased's car indicated that at the time of impact he was either backing out of the tavern lot, turning into the tavern lot or his car was simply stopped on the highway. There was testimony that he had not been in the tavern that night, thus making it unlikely that he was backing out of the lot. There was also testimony that the eastbound lane was clear of traffic for a substantial interval of time prior to the collision; thus, if the deceased was turning into the lot, there was nothing to prevent him from completing the maneuver. The turn could have been completed while the defendant's car was in a skid for a distance of 48 feet before impact. The defendant testified that the accident happened too fast for him to make a positive judgment as to whether the deceased's car was moving or not at the time of the collision. He stated that if it was moving at all, it must have been going very slowly. From these facts, the jury could reasonably infer that deceased's car was stopped or parked on the highway.

The appellant contends that the testimony of Kilian Furger, the bartender at the tavern, makes it impossible to find anything other than that the deceased was in the act of turning into the tavern at the time of collision. Furger stated that he was standing behind the bar looking out a window in the tavern door, and he saw two sets of headlights go past, moving west, and a few moments

later he heard a crash. The implication here is that he saw the headlights on the deceased's car and then saw the lights on the defendant's car and then heard the crash. This would indicate that the deceased's car was moving at the time of the collision. But there was other evidence from which a contrary conclusion could be drawn.

One witness said that the ignition of the deceased's car was on after the accident but the lights were not. Yet the lights worked perfectly when they were turned on by the tow truck driver. This evidence, if believed, would indicate that Furger was in error when he said he saw two sets of lights heading west just before the crash. In any event, all that is necessary to support the giving of the instruction is that there be some credible evidence which would justify a conclusion by the jury that the vehicle was stopped. There was such evidence in this case; and the presence of other evidence justifying an opposite conclusion does not preclude the giving of the instruction. Consequently, the trial court was not in error in giving the parking and stopping instruction.

## Alleged perversity of verdict.

Appellant's contention that the verdict was perverse is based on two points: First, appellant claims that the presumption that a deceased person was exercising ordinary care for his own safety was never rebutted in this case. On that basis alone appellant contends it was impossible for the jury to find that the deceased was negligent in any respect. Since they did find him negligent, the verdict must be perverse. The appellant's contention cannot be sustained for two reasons: First, the appellant waived the benefit of that rule by failing to ask the trial court to instruct the jury as to the operation of the presumption. Secondly, the presumption is procedural in nature only and drops from the case whenever there is any evidence to indicate that there was negligence on

the part of the deceased. *Klinzing v. Huck* (1970), 45 Wis. 2d 458, 173 N. W. 2d 159. In this case, evidence introduced by the defendant showing that the deceased was parked crosswise on the highway, with no lights, was easily adequate to destroy the presumption.

Appellant's second point on perversity is based on the fact that the jury awarded only $18,000 for pecuniary loss. Since the trial court considered this issue on motions after verdict and since he filed a detailed memorandum supporting his conclusion that the award was not inadequate, this court does not review the evidence *ab initio* but looks only to see if the trial court abused its discretion in concluding that there was ample evidence to support the amount of the award. *Gervais v. Kostin* (1970), 48 Wis. 2d 190, 201, 179 N. W. 2d 828.

Considering all the evidence, the award is low, but the jury was entitled to consider the fact that the deceased had an obligation to pay $20 per week for the support of two minor children, the issue of a previous marriage. Both the appellant and the deceased had been divorced prior to their marriage. The appellant overlooks the well-established rule that even where damages are clearly inadequate, that *alone* does not establish perversity in the verdict. *Gustafson v. Engelman* (1951), 259 Wis. 446, 49 N. W. 2d 410; *Ketterer v. Maerker* (1965), 28 Wis. 2d 463, 137 N. W. 2d 385. We note the jury award for loss of society and companionship was in excess of the statutory limitation of $5,000.

We conclude that the trial court properly admitted into evidence the results of the blood test of the deceased; that under the evidence in the record, the instructions on the emergency doctrine and on stopping a vehicle on the highway were proper; and that the trial court found no evidence of passion or prejudice in the award for pecuniary loss, nor do we.

*By the Court.*—Judgment affirmed.