WICKER, Respondent, v. HADLER and another, Appellants. [Case No. 344.]

HOCHMUTH, Respondent, v. HADLER and another, Appellants. [Case No. 345.]

*Nos. 344, 345.   Argued February 27, 1973.—Decided April 9, 1973.*
(Also reported in 205 N. W. 2d 770.)

174

176

For the appellants there were briefs by *Cannon, Mc-Laughlin, Herbon & Staudenmaier,* attorneys, and *L. William Staudenmaier* of counsel, all of Milwaukee, and oral argument by *L. William Staudenmaier.*

For respondent Dyanne M. Wicker there was a brief by *Brady, Tyrrell, Cotter & Cutler,* attorneys, and *Peter W. Bunde* and *Peter C. Karegeannes* of counsel, all of Milwaukee, and oral argument by *Mr. Bunde.*

For respondent Walter Hochmuth there was a brief and oral argument by *Burton B. Polansky* of Milwaukee.

ROBERT W. HANSEN, J. In prizefight parlance, this was a quick knockdown. The scuffle between the two plaintiffs lasted no more than thirty to sixty seconds. There is a question as to responsibility for the scuffle. There is no question that it ended with one participant on his back on the pavement, the other kneeling or crouched over him.

The additional fact, not in dispute, is that this fight or scuffle took place in a traffic lane, not at a crosswalk, of a well-traveled traffic artery in the city of Milwaukee. (Appleton Avenue at the point where defendant's automobile struck the prone or near-prone individuals is U. S. Highway 41, city route.)

What duties, as to lookout and due care, devolve upon either or both of two contestants in a mid-block street scuffle? What if a group of adults chose a major city highway as the place to play a game of football or baseball? Would the duty to watch out for oncoming cars be any less for such willing participants in a street game than it is for a pedestrian crossing such highway at a place other than a crosswalk? While the right-of-way statute refers only to persons crossing at other than a crosswalk,[1] we do not see how or why entirely volitional participation in a street game lowers, much less removes, the duties placed upon one walking across the street. Running for a curbside first base or toward a mid-block goal line does not excuse the runner from the reasonable man duty to exercise due care imposed upon one walking across the highway. In fact, it adds an additional element: using a highway for a purpose for which it was not intended, and placing oneself in a position of danger while so doing.

[1] Sec. 346.25, Stats.

This court has, in a number of cases, held that a pedestrian, crossing a highway at other than a crosswalk, is, as a matter of law, at least 50 percent negligent in the event he is struck by a motor vehicle during the crossing.[2] However, these cases cite and rely upon the right-of-way statute, imposing on a noncrosswalk pedestrian on a highway an absolute duty to yield the right-of-way.[3] Where a person had stepped out of his car and walked eight feet to another car, he was held not to be a "pedestrian" within the meaning of the right-of-way statute.[4]

Where a person was struck by an automobile while lying unconscious on the street, he was held not to come within the right-of-way statute because, ". . . One who is unconscious cannot take the action that may be necessary to enable him to yield the right-of-way and cannot be held responsible for nonperformance of an act that it is impossible for him to perform."[5] However, where such opportunity to observe is lost, on the part of a pedestrian, through the injured party's own acts, a jury verdict denying recovery has been upheld.[6]

We read these cases, particularly the last two cited, as distinguishing between voluntary and involuntary acts resulting in a person being in the highway at other than a crosswalk. In the *Gilberg Case,* this court stated, ". . . Whether or not she can properly be considered a pedestrian while she was lying there, while she *was* a pedestrian she did not observe the care required of pedestrians

[2] *Nelsen v. Cairo* (1955), 270 Wis. 312, 70 N. W. 2d 665; *Post v. Thomas* (1942), 240 Wis. 519, 3 N. W. 2d 344; *Langworthy v. Reisinger* (1946), 249 Wis. 24, 23 N. W. 2d 482.

[3] Sec. 346.25, Stats.

[4] *Carlsen v. Hardware Mut. Casualty Co.* (1949), 255 Wis. 407, 411, 39 N. W. 2d 442.

[5] *Kleiner v. Johnson* (1946), 249 Wis. 148, 152, 23 N. W. 2d 467.

[6] *Gilberg v. Tisdale* (1961), 13 Wis. 2d 249, 255, 108 N. W. 2d 515.

and that lack is a cause of her accident. . . ." [7] So we conclude that persons on a highway for game or fight are required to maintain a lookout and are negligent for placing themselves in such position of danger to their own safety—but only if their presence is entirely voluntary.

The "if" is added and becomes important in a case, as we have here, involving a fight or scuffle. On many occasions, perhaps most, both participants in a boxing or wrestling contest enter the fray willingly. But not always so. Here there was testimony that one plaintiff was grabbed by the lapels by the other, jerked and thrown or wrestled to the pavement. If this was the fact, then the unwilling participant in the scuffle, like the unconscious person on the pavement, had no duty to observe the standard of care and lookout required of pedestrians. He did not willingly place himself in a position of danger. He must be permitted to defend himself against the attack made upon him. One so acting in self-defense has no duty to watch out for approaching vehicles. His attention is justifiably concentrated upon avoiding blows from his aggressor.

As to the aggressor of two willing participants in a fight in the middle of a highway, there is involved not only the duty to maintain lookout, but the deliberate act of placing oneself in a position of danger—to wit: scuffling in the middle of a highway. Where a jury verdict, upheld by the trial court, was 60-40 percent in favor of a plaintiff who caught his arm between a parked train car and defendant's truck which was backing up, this court reversed, holding, as a matter of law, that the negligence of the plaintiff was at least equal to that of the defendant because the plaintiff had deliberately placed himself in a position of danger.[8] Unless this holding were to be reversed, we see no way of making voluntary participa-

[7] *Id.* at page 255.
[8] *Gvora v. Carlson* (1949), 255 Wis. 118, 37 N. W. 2d 848.

tion in a mid-highway fight or scuffle less of a deviation from the reasonable man standard than was the conduct of the plaintiff in the *Gvora Case.*

In the case before us, no great consequence or importance was given at the trial to who was responsible for the street scuffle. True, the sequence of events leading up to the accident was testified to. But no instructions were requested or given on the matter of whether the scuffle was begun by one of the two scufflers, or whether it was voluntarily engaged in by both participants. There is no way, from this verdict, of gathering who the jury found to be the aggressor or whether, alternatively, it found the scuffle to have been willingly engaged in by both of the plaintiffs. Whether the significance of the voluntariness or lack thereof as to participation on the part of either of the two scufflers was overlooked or felt to be inconsequential, we find that the real controversy between the parties has not been fully tried. This is not a case where there were alternative causes of action, and the parties made a choice.[9] This is not a case of the inclusion of a misleading question in a jury verdict which may lead to jury confusion.[10] Rather, it is a case where we exercise our discretion to order a new trial because it appears to us that the real controversy has not been fully tried and that justice has probably miscarried.[11]

*By the Court.*—Judgments reversed, and cause remanded for a new trial consistent with this opinion.

[9] *John Mohr & Sons, Inc. v. Jahnke* (1972), 55 Wis. 2d 402, 407, 408, 198 N. W. 2d 363.

[10] *Behning v. Star Fireworks Mfg. Co.* (1973), 57 Wis. 2d 183, 188, 203 N. W. 2d 655.

[11] *Weggeman v. Seven-Up Bottling Co.* (1958), 5 Wis. 2d 503, 93 N. W. 2d 467, 94 N. W. 2d 645.