Gail M. STAPLES as Guardian for Chantell
Staples, a minor, and Chantell Staples,
Plaintiffs-Appellants,

v.

Dennis R. GLIENKE† and American Family
Mutual Insurance Company,† a Wisconsin
corporation licensed to do business in the
State of Wisconsin, Defendants-Respondents.

Court of Appeals

*No. 87–0304. Submitted on briefs September 3, 1987.—Decided
October 20, 1987.*

(Also reported in 416 N.W.2d 920.)

† Petition to review denied.

For the plaintiffs-appellants, there were briefs by *Kevin L. Callahan* of *Paige J. Donnelly, Ltd.* of St. Paul, Minnesota.

For the defendants-respondents, there was a brief by *Susan Schleif Gherty* of *Gherty and Dunlap,* of Hudson.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. This is an appeal from a judgment dismissing a wrongful death action. The decedent's minor daughter and her guardian (appellants) commenced this action to recover for damages sustained when Lonnie Staples was struck by an automobile driven by Dennis Glienke.

The issues presented on appeal are whether: (1) blood test results drawn pursuant to sec. 346.71(2), Stats.,[1] are confidential in the hands of the county

---

[1] Unless otherwise indicated, all statutes cited herein are from volumes 1983–84. Although certain sections have been slightly modified, for our purposes the substance of these statutes remains the same.

coroner; (2) the accuracy of these blood test results could reasonably be questioned; (3) Staples had an absolute duty as a pedestrian to yield the right-of-way to motorists; and (4) Staples' negligence in failing to yield the right-of-way was greater than any negligence on the part of Glienke as a matter of law, so as to preclude recovery.

We conclude that sec. 346.71(2) does not prohibit the coroner from releasing the blood test results; appellants failed to rebut the prima facie accuracy of these tests; a pedestrian has an absolute duty to yield the right-of-way if his previous voluntary acts result in his being placed in a position of danger on the highway; and the trial court erred in determining that Staples was more negligent than Glienke as a matter of law. Accordingly, we reverse the judgment of dismissal and remand for a new trial.

The resolution of these issues requires a full recitation of the facts. Glienke's vehicle struck Staples at 4:30 a.m. on a rural highway. Staples was standing in the right-hand lane near the centerline of the blacktop roadway. He was wearing a dark jacket, jeans, and dark gloves. Staples was struck by the right front corner of Glienke's vehicle. Blood tests indicated that Staples' blood contained .214% alcohol by weight at the time of his death.

The accident occurred approximately one-half mile below the crest of a straight, gently descending grade. The road conditions were dry. Police officers testified that there were patches of intermittent fog south of the accident scene; however, the accident scene itself was apparently clear. The officers also indicated that a certain amount of bugs had accumulated on Glienke's windshield. There is a dispute as to whether the accumulation affected visibility.

Glienke testified that he did not notice Staples standing on the roadway until just prior to impact. He swerved but could not avoid hitting Staples. Glienke did not specifically testify whether his headlights were aimed bright or dim. He was traveling approximately fifty to fifty-five miles per hour. A preliminary breath test indicated Glienke's blood alcohol level was .02%.

There is evidence indicating that Staples may have previously been involved in a motorcycle accident approximately 1.3 miles from the point where he was struck by Glienke's vehicle. An officer testified that a motorcycle, later identified as Staples', was discovered below an embankment adjacent to the roadway. The motorcycle had apparently been traveling north, around a curve on the highway. It left the road and traveled some distance on the shoulder at an angle to a point approximately 196 feet from the point where it left the roadway. Traces of blood and hair were discovered on a steel reflectorized post at that point. The motorcycle continued downhill until it came to rest 267 feet from where it left the traveled portion of the roadway. Blood was also discovered at this point.

No evidence was adduced indicating that Staples had attempted to stop the motorcycle from leaving the highway. An officer testified that neither skid marks nor attempts to lay the motorcycle down on the gravel portion of the road were found. No expert evidence was presented linking the blood or hair discovered near the motorcycle to Staples. No blood was discovered on the roadway between the point of the motorcycle accident and the point of impact with Glienke's vehicle.

Staples was pronounced dead on arrival at a local hospital. The county coroner drew the sample of

Staples' blood and submitted it with a "Coroner's Report of Motor Vehicle Accident Death" form to the state laboratory of hygiene for analysis. The results of the blood test were returned to the coroner and forwarded to the department of health and social services pursuant to the requirements of sec. 346.71(2).

The trial court denied appellants' motion to suppress the coroner's record containing the blood test results. After the presentation of appellants' case, the trial court granted Glienke's motion to dismiss the cause of action. The court concluded that a pedestrian has an absolute duty to yield the right-of-way to vehicular traffic, and that under the facts of the case Staples was at least 51% negligent as a matter of law.

## I. CONFIDENTIALITY OF BLOOD TEST

Appellants assert that sec. 346.71(2) prevents disclosure of the blood test results. Section 346.71(2) provides in part:

> **Coroners or medical examiners to report; require blood specimen. ...**
>
> (2) In cases of death involving a motor vehicle in which the decedent was the operator of a motor vehicle or a pedestrian 16 years of age or older and who died within 6 hours of the time of the accident, the coroner or medical examiner shall require that a blood specimen of at least 10 cc. be withdrawn from the body of the decedent within 12 hours after his or her death, by the coroner or medical examiner or by a physician so designated by the coroner or medical examiner or by a qualified person at the direction of such physician. ... The blood so drawn shall be forwarded to a laboratory approved by the department of health and social

25

services for analysis of the alcoholic content of such blood specimen. The coroner or medical examiner causing the blood to be withdrawn shall be notified of the results of each analysis made and shall forward the results of each such analysis to the department of health and social services. *The department shall keep a record of all such examinations to be used for statistical purposes only. The cumulative results of the examinations, without identifying the individuals involved, shall be disseminated and made public by the department.* (Emphasis added.)

Both parties agree that Staples' blood was drawn pursuant to sec. 346.71(2).[2] Appellants rely on the statutory language to argue that the blood test results shall be used for statistical purposes only. Glienke suggests, on the other hand, that the statute itself says nothing about the test results being confidential in the hands of the coroner. In the alternative, Glienke argues that the results are properly admissible under sec. 885.235(1), Stats.

These two reasonable interpretations advanced by the opposing parties demonstrate the statute's ambiguity. Section 346.71(2) specifically addresses the question of whether the test results are confidential in the hands of the department of health and social services. The statute does not, however, define the confidentiality of the blood test results in the hands of the county coroner. We must therefore go beyond the statutory language to discern its scope. *See State v. Zielke,* 137 Wis. 2d 39, 46, 403 N.W.2d 427, 430 (1987).

---

[2]Because Glienke concedes that the blood sample was drawn pursuant to sec. 346.71(2), we need not reach the issue of whether the blood was in fact drawn pursuant to sec. 979.01, Stats., to assist the coroner in determining the cause of death.

■

We begin with the basic proposition that we must strictly construe privileges and confidentialities granted by statute. *Davison v. St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 197, 248 N.W.2d 433, 438 (1977). Accordingly, a confidentiality is absent from sec. 346.71(2) unless the legislature has specifically and unequivocally established a prohibition against the disclosure of the blood test results at issue. *See id.* at 197, 248 N.W.2d at 437.

■

We conclude that sec. 346.71(2) does not provide that the coroner's records of these results shall be confidential. The legislature has specifically imposed confidentiality only on blood alcohol test results in the hands of the department of health and social services. Section 346.71(2) provides that "the department" shall keep a record of all such examinations to be used for statistical purposes only. "The department" is required to make public the cumulative results of such examinations without identifying the individuals involved.

Significantly, the statute does not specifically provide that the coroner's records of these examinations shall be confidential. Because there is no express provision regarding the confidentiality of the coroner's records, it follows under the rule of strict construction that a coroner may release the results of such examinations.[3]

---

[3]Our conclusion contemplates that the coroner has a duty as custodian of the records to determine whether there is a public interest in withholding inspection that outweighs the right of the public to have access to the coroner's record of the blood test results. We are mindful of the public policy generally favoring the right of inspection of public records. However, in an exceptional

Our conclusion that the coroner's blood test records are not confidential is also in accord with several longstanding opinions of the attorney general. In 59 Op. Att'y Gen. 226, 228 (1970), the attorney general interpreted sec. 346.71(2) and concluded that the statute did not prohibit county coroners from releasing the results of blood tests conducted pursuant to that statute. That conclusion was later confirmed in 67 Op. Att'y Gen. 12, 15–16 (1978).

In determining the meaning of an ambiguous statute, we generally give great weight to a longstanding interpretation of a statute by the attorney general. This interpretation is accorded even greater weight, and is regarded as presumptively correct, when the legislature later amends the statute but makes no changes in response to the attorney general's opinion. *See Town of Vernon v. Waukesha County,* 99 Wis. 2d 472, 479, 299 N.W.2d 593, 598 (Ct. App. 1980), *aff'd,* 102 Wis. 2d 686, 307 N.W.2d 227 (1981). Since 1970, the legislature has modified the language of sec. 346.71(2), but has failed to change the substance of the sentences interpreted by the attorney general.

Nevertheless, appellants insist that dicta in *Luedtke v. Shedivy,* 51 Wis. 2d 110, 118, 186 N.W.2d 220, 225 (1971), compels a contrary conclusion. We disagree. In *Luedtke,* admissibility was governed by sec. 885.235(1), which specifically provides that chemical tests for intoxication are admissible in any action where it is material to prove a person operating a

---

case the harm in divulging matters of record is more damaging than a refusal to inspect. The specific reasons for refusing an inspection demand may, of course, be challenged in court. *See, e.g., Beckon v. Emery,* 36 Wis. 2d 510, 516, 153 N.W.2d 501, 503 (1967).

motor vehicle was intoxicated.[4] *Luedtke,* 51 Wis. 2d at 118, 186 N.W.2d at 225. Unlike the present case, Luedtke was operating a motor vehicle at the time of his death. Here, Staples was not operating a motor vehicle at the time of his death, and thus sec. 885.235(1) is inapplicable.

We acknowledge that *Luedtke* contains language indicating that absent the applicability of sec. 885.235(1), the argument is "plausible" that sec. 346.71(2) prohibits the admission of test results in automobile litigation. We do not dispute that the argument is plausible. However, it does not follow that because an argument is plausible, it is therefore valid. The *Luedtke* court did not determine the confidentiality of coroners' blood test records under sec. 346.71(2). Accordingly, *Luedtke* does not support the proposition that coroners' blood test records are confidential under sec. 346.71(2).

## II. ACCURACY OF BLOOD TEST

Appellants next argue that even if the blood test results are admissible, certain factors exist whereby a trier of fact could reasonably question the accuracy of

---

[4]Section 885.235(1) provides in part:

**Chemical tests for intoxication.** (1) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant or had a blood alcohol concentration of 0.1% or more when operating or driving a motor vehicle, or while handling a firearm, evidence of the amount of alcohol in the person's blood at the time in question, as shown by chemical analysis of a sample of the person's blood or urine or evidence of the amount of alcohol in the person's breath, is admissible on the issue of whether he or she was under the influence of an intoxicant or had a blood alcohol concentration of 0.1% or more if the sample was taken within 3 hours after the event to be proved.

such test results. We do not reach this issue, however, because appellants failed at trial to attempt to rebut the prima facie presumption of accuracy afforded statutory blood test results.

A chemical test authorized or required by statute is entitled to a prima facie presumption of accuracy. *State v. Disch*, 119 Wis. 2d 461, 466–67, 351 N.W.2d 492, 499–500 (1984). As that court stated:

> These methods of measurement carry a prima facie presumption of accuracy. Whether the test was properly conducted or the instruments used were in good working order is a matter of defense. The administration of law would be seriously frustrated if the validity of basic and everyday accepted tests had to be a matter of evidence in every case in the first instance.

*Id.* at 474, 351 N.W.2d at 499 (quoting *State v. Trailer Service, Inc.*, 61 Wis. 2d 400, 408, 212 N.W.2d 683, 688–89 (1973)).

Here, the blood sample was required by sec. 346.71(2). The results of the test are thus presumptively accurate. Appellants had the duty at trial of going forward with evidence in an attempt to rebut the prima facie accuracy of the blood test results. Appellants failed to meet that burden. We will not address the perceived merits of appellants' arguments for the first time on appeal. *See Allen v. Allen*, 78 Wis. 2d 263, 270–71, 254 N.W.2d 244, 248 (1977).

## III. ABSOLUTE DUTY TO YIELD RIGHT-OF-WAY

The next issue concerns whether Staples had an absolute duty to yield the right-of-way to a motorist. Section 346.25, Stats., provides:

> **Crossing at place other than crosswalk.** Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the roadway.

■ It has been consistently held that the duty of a pedestrian to yield the right-of-way under this statute is absolute regardless of any negligence on the part of the driver, and that failure to yield constitutes causal negligence as a matter of law. *Field v. Vinograd,* 10 Wis. 2d 500, 505, 103 N.W.2d 671, 674 (1960). Appellants argue, however, that Staples was not crossing the highway; rather, he was walking alongside it. Section 346.28, Stats., provides in part:

> **Pedestrians to walk on left side of highway; pedestrians on sidewalks.** (1) Any pedestrian walking along and upon a highway other than upon a sidewalk shall walk on and along the left side of the highway and upon meeting a vehicle shall, if practicable, step to the extreme outer limit of the traveled portion of the highway.

■ This statute required Staples to walk on the left side of the highway and yield the right-of-way to oncoming vehicular traffic. His failure to comply with this statute also constitutes negligence as a matter of law. *Panzer v. Hesse,* 249 Wis. 340, 344, 24 N.W.2d 613,

615 (1946). It is therefore unnecessary for us to decide whether Staples was crossing rather than walking along the highway when struck since the distinction is without a difference. His duty was absolute under either statute.

Appellants next argue that there are exceptions to the absolute duty to yield the right-of-way. Appellants assert that a pedestrian is negligent in failing to yield only if his presence on the highway is entirely voluntary. According to appellants, Staples was severely injured in a motorcycle accident, rendering him unable to appreciate the precariousness of his position on the roadway. Thus, he should not be held responsible for the nonperformance of an act that was impossible for him to perform. To support this contention, appellants cite *Kleiner v. Johnson,* 249 Wis. 148, 23 N.W.2d 467 (1946), and *Wicker v. Hadler,* 58 Wis. 2d 173, 205 N.W.2d 770 (1973).

*Kleiner* involved an automobile striking a person who was lying unconscious on the street. The court stated that "[o]ne who is unconscious cannot take the action that may be necessary to enable him to yield the right-of-way and cannot be held responsible for nonperformance of an act that it is impossible for him to perform." *Id.* at 152, 23 N.W.2d at 469. It cannot be argued under the evidence in the present case that Staples was lying on the road unconscious when struck by Glienke's vehicle.

*Wicker* involved an unwilling participant in a mid-block street scuffle who was jerked by the collar and thrown to the pavement. The court reasoned that the unwilling participant, like the unconscious person lying on the highway, had no duty to observe the standard of care and lookout required of pedestrians. He did not willingly place himself in a position of

danger. *Id.* at 180, 205 N.W.2d at 774. The *Wicker* court thus distinguished between voluntary and involuntary acts resulting in a person being in a position of danger on the highway. Implicit in the court's reasoning, however, is the recognition that a pedestrian voluntarily places himself in a position of danger when the pedestrian's opportunity to observe his statutory duty is lost through the pedestrian's own previous voluntary act. *See id.* at 179, 205 N.W.2d at 773 (citing *Gilberg v. Tisdale,* 13 Wis. 2d 249, 255, 108 N.W.2d 515, 517 (1961)).

In *Gilberg,* a darkly dressed and intoxicated pedestrian was struck by an automobile while lying on the road. The court reasoned that although the pedestrian perhaps involuntarily fell down on the road, the preceding act of drinking was a voluntary act that resulted in her inability to take care of herself in her use of the highway. *Id.* at 256, 108 N.W.2d at 518. We find this reasoning controlling.

We conclude, therefore, that Staples had an absolute duty to yield the right-of-way if his own voluntary act of drinking resulted in placing him in a position of danger. We refuse to separate the arguably involuntary act of standing on the highway from voluntary acts that proximately place a person in that situation. A person may not deliberately proceed to a point of danger and then claim protection that otherwise might be afforded him. *See Ackley v. Farmers Mutual Auto. Ins. Co.,* 273 Wis. 422, 425–26, 78 N.W.2d 744, 746 (1956).

In the usual case, a factual question would arise as to whether Staples indeed suffered injuries in a motorcycle accident and, if so, whether they rendered him unable to observe the statutory duty required of

pedestrians. Appellants urge that the inquiry end here. We disagree. Should a jury decide that Staples suffered injuries and that he was unable to appreciate his position on the highway, the question remains whether the injuries were the proximate result of Staples' previous voluntary acts of intoxication.

In the present case, the trial court apparently determined that the only reasonable inference adduced from the evidence presented by appellants was that the injuries purportedly sustained as a result of the motorcycle accident were the proximate result of Staples' intoxication and the resulting inability to care for himself while operating a motorcycle. Although the evidence provided a reasonable basis for that inference, we decline to conclude as a matter of law that it was the only reasonable inference. The drawing of reasonable inferences from the evidence presented was an appropriate part of the fact finding function of the jury. *Gilberg*, 13 Wis. 2d at 256, 108 N.W.2d at 518. Accordingly, we conclude that a new trial is necessary for the jury to determine the negligence of both parties and, if necessary, to apportion negligence.

## IV. APPORTIONMENT

In light of our conclusion that there must be a new trial, we consider it helpful to address the issue of the apportionment of negligence. Generally, the comparison of the pedestrian's negligence with the negligence, if any, of the driver is also an appropriate function of the jury. *Metz v. Rath,* 275 Wis. 12, 18, 81 N.W.2d 34, 37 (1957). It is only in an exceptional case

that a trial court, or reviewing court, may say as a matter of law that the negligence of the pedestrian is greater than that of the driver. *See, e.g., Crawley v. Hill,* 253 Wis. 294, 34 N.W.2d 123 (1948); *Post v. Thomas,* 240 Wis. 519, 3 N.W.2d 344 (1942); *Weber v. Barrett,* 238 Wis. 50, 298 N.W. 53 (1941).

The facts of these prior cases distinguish them from the present case. In *Crawley,* the pedestrian ran out onto the highway directly into the path of the oncoming car. The pedestrian in *Post* came out onto the street suddenly from between two parked cars. Similarly, in *Weber,* the pedestrian ran across the street ahead of an automobile.

On the other hand, according to Glienke's own testimony, Staples was standing stooped over a straight stretch of roadway when struck by Glienke. We conclude, therefore, that the trial court erred in determining as a matter of law that Staples' negligence was greater than Glienke's. It may well be that Staples' intoxicated condition, coupled with his position on the dark highway and his dark clothing, were deceptive to Glienke. *See Gilberg,* 13 Wis. 2d at 254, 108 N.W.2d at 517. Nevertheless, it is an appropriate function of the jury to determine whether Glienke was negligent under the circumstances. Should the jury determine that Glienke was negligent, they must then compare that negligence to Staple's.

*By the Court.*—Judgment reversed and cause remanded with directions to grant a new trial.