STATE, Respondent, v. DRISCOLL, Appellant.

*No. State 107.   Argued January 6, 1972.—Decided February 3, 1972.*
(Also reported in 193 N. W. 2d 851.)

700

For the appellant there was a brief by *Shellow & Shellow* and *James M. Shellow* and *James A. Walrath,* all of Milwaukee, and oral argument by *James M. Shellow.*

For the respondent the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.  Driscoll claims sec. 944.11 (1) and (2), Stats., is unconstitutional because of vagueness and overbreadth. We disagree. The test of vagueness of a penal statute is whether it gives reasonable notice of the prohibited conduct to those who would avoid its penalties. The test of overbreadth is whether the language of the section is so broad as to discourage conduct expressly protected by the constitution, *i.e.,* conduct the state has no right to prohibit. *Connelly v. General Construction Co.* (1926), 269 U. S. 385, 46 Sup. Ct. 126, 70 L. Ed. 322, is often quoted for the void-for-vagueness rule. Recent cases citing *Connelly* and noting the distinction between vagueness and overbreadth are *Cameron v. Johnson* (1968), 390 U. S. 611, 616, 88 Sup. Ct. 1335, 20 L. Ed. 2d 182; *Zwickler v. Koota* (1967), 389 U. S. 241, 249, 88 Sup. Ct. 391, 19 L. Ed. 2d 444.

Vagueness rests upon the procedural due-process requirement of a fair notice and the defendant cannot

hypothesize fact situations but is confined to the conduct charged when it is so obviously within the zone of prohibited conduct that no reasonable man could have any doubt of its criminality. *Jordan v. De George* (1951), 341 U. S. 223, 71 Sup. Ct. 703, 95 L. Ed. 886; *Robinson v. United States* (1945), 324 U. S. 282, 65 Sup. Ct. 666, 89 L. Ed. 944.

The acts of indecent liberty here involved are fellatio and cunnilingus and there can be no doubt in the minds of reasonable persons that such acts constitute acts of sex perversion and are clearly within the meaning of indecent use and liberty of the sex organs. Consequently, we do not reach the niceties of the hypothetical applications of this section to other acts to test the definition of or the scope of indecent liberties or indecent use or whether actual intention need be an express element of the crime.[1]

The jury was given the definition of "indecent liberties" found in Wis J I—Criminal 1525, 1527, 1529: ". . . the phrase 'indecent liberties' means 'such liberties as the common sense of society would regard as indecent and improper.' " This language is taken from *State v. Hoffman, supra,* note 1, which analogized the jury's duty in such case to that of a civil jury with the duty of determining what is reasonable care, reasonable time, or the like. Driscoll argues such a variable standard of guilt renders the statute void for vague-

---

[1] Driscoll finds ambiguity in the word "privates" in the fact that the comment to Wis J I—Crim. 1525 and 1527 cites *State v. Nash* (1929), 83 N. H. 536, 145 Atl. 262, which said "privates" included the "immediate vicinity" thereof. The instructions themselves contain no such language. He also finds ambiguity in the fact *State v. Hoffman* (1942), 240 Wis. 142, 2 N. W. 2d 707, from which the definition of "indecent liberties" in these instructions is taken concerned the touching of breasts. As the state notes, *State v. Hoffman* arose under a statute (sec. 351.34 (1941)) which did not use the word "privates."

ness.[2] We disagree. In *State v. Evjue* (1948), 253 Wis. 146, 159, 33 N. W. 2d 305, we held it is not violation of due process for a statute to cast upon the public the duty of care or even of caution, if "there is sufficient warning to one bent on obedience, that he comes near the proscribed area." While indecent liberties or use is not a slide-rule measurement, we think what the common sense of society regards as indecent or improper to be a sufficiently definite guideline to alert a person bent on obedience.

While it is permissible under the argument of overbreadth which rests on substantive rather than procedural due-process grounds to raise hypothetical examples of the section's applicability to show that the section deters protected activities, we do not find Driscoll's example persuasive or valid to establish overbreadth. Only a strained construction of the terms "indecent liberties" or "indecent use" in sec. 944.11 (2) and (3), Stats., would give such a sweep as to be censured for overbreadth. The normal and reasonable meaning of the language must be found so broad that its sanctions

---

[2] Driscoll cites *Clemens v. State* (1922), 176 Wis. 289, 312, 185 N. W. 209, and Remington and Helstead, *The Mental Element In Crime—A Legislative Problem,* 1952 Wis. L. Rev. 644, 658, as critical of the imposition of criminal penalties for ordinary negligence. The trial court noted secs. 940.06, 940.07, 940.08, 940.09, 940.24, 941.01, 941.03, 941.10, and 941.20, Stats., impose penalties for degrees of negligence. Sec. 940.07, imposes liability merely for a want of ordinary care. *State v. Woodington* (1966), 31 Wis. 2d 151, 142 N. W. 2d 810, 143 N. W. 2d 753, found sec. 189.19 (2), Stats. 1965, not vague although penalties were imposed for the filing of security statements by one who in the exercise of "reasonable care" should have known them to be false or misleading. Ch. 189 was replaced by the Wisconsin Uniform Securities Law, ch. 551, Stats. 1969. In *United States v. Ragen* (1942), 314 U. S. 513, 62 Sup. Ct. 374, 86 L. Ed. 383, cited by *State v. Woodington* and the trial court here, it is said the fact a penal statute requires a jury to weigh the question of reasonableness does not make the statute vague.

apply to constitutionally protected conduct which the state is not entitled to regulate before a statute can be faulted for overbreadth. *State v. Starks* (1971), 51 Wis. 2d 256, 259, 260, 186 N. W. 2d 245.

Driscoll claims error in the admission of inculpatory statements made by him to a social worker at the Southwestern Mental Health Clinic in Lancaster. The social worker had a bachelor's degree in social work and a master's in business administration but was neither a physician nor had any medical training. Driscoll and his wife came to the clinic on a self-referral basis on November 25, 1968, and Mrs. Driscoll stated to the social worker that her husband had had relations with her daughter. Driscoll denied such conduct. On a return visit on December 2, 1968, Driscoll again denied such conduct, but on December 3, 1968, Driscoll made a statement to the social worker that he had in fact had relations with the child. Driscoll stated the social worker told him such conferences were confidential. The social worker testified confidentiality was essential to his work and two affidavits were put in evidence at the hearing on the motion to suppress, one from a psychiatrist at the clinic and one from another social worker, stating confidentiality in such conferences was crucial.

Since no action for divorce or legal separation was pending and the conference with the social worker was not at the behest of a family court commissioner, sec. 247.081, Stats., is not applicable.[3] While it is argued

[3] "247.081 Reconciliation effort; waiting period for trial of actions for divorce or legal separation. (1) In every action for divorce or legal separation the family court commissioner shall cause an effort to be made to effect a reconciliation between the parties, either by his own efforts and the efforts of a family court conciliation department if it exists or by referring such parties to and having them voluntarily consult the director of the town, village, city or county public welfare department, a county mental health or guidance clinic, a clergyman, or a child welfare agency licensed under ss. 48.66 to 48.73, or by other suitable means. The

this situation has all the earmarks of a situation which calls for testimonial confidentiality, we cannot give the section such a liberal construction as would change the express language of its scope and applicability. *Lukaszewicz v. Concrete Research, Inc.* (1969), 43 Wis. 2d 335, 342, 168 N. W. 2d 581.

Nor can we accept the argument that the state is estopped from using the inculpatory statements made to the social worker. Driscoll relies on *Killough v. United States* (D. C. Cir. 1964), 336 Fed. 2d 929; *State v. Rush* (1929), 108 W. Va. 254, 150 S. E. 740; *Commonwealth v. Edwards* (1935), 318 Pa. 1, 178 Atl. 20; *People v. Rockower* (1947), 296 N. Y. 369, 73 N. E. 2d 555. But none of these cases use the term "estoppel" although they do involve the question of admissibility of statements given after promises of nondisclosure. As we read these cases, the questioner was in such an official capacity or authoritative position that the government should be bound by the promise of the official.[4] The

person so consulted shall not disclose any statement made to him by either party without the consent of such party."

[4] In *State v. Rush*, a bank employee who had embezzled funds was questioned by a deputy commissioner of banking, who promised confidentiality. The court noting the deputy commissioner had authority to compel disclosure of financial data from such bank official, said the deputy commissioner was "one in authority" and therefore the statement was not voluntary within the meaning of an earlier West Virginia case. In *Killough v. United States*, the prisoner was taken from his cellblock to the visiting room where the "classification intern" questioned him as a prelude to assignment and treatment within the institution. The court, citing *inter alia State v. Rush*, noted the interview was "pursuant to routine procedure" of the jail. *Commonwealth v. Edwards* is somewhat unclear. Driscoll's quote from the instruction therein approved is accurate, but the court also makes the statement that a promise of secrecy is not a bar to a statement's introduction into evidence. In *People v. Rockower*, a district attorney told a defendant in custody he could not use the statements. The court spoke in terms of immunity and said the administration of justice would suffer if the district attorney could not be held to his bargain.

social worker in the instant case bore no such relationship to the government.

We are urged to create by case law a privileged confidential relationship for private and governmental social workers. This is possible and the four prerequisites for the granting of such testimonial privilege have been well stated in 8 Wigmore, *Evidence*, p. 527, sec. 2285. These are: (1) The communications must originate in a confidence they will not be disclosed; (2) confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relationship should be one which, in the opinion of the community, ought to be sedulously fostered; (4) the injury which would inure to the relationship by disclosure must be greater than the benefit thereby gained for the correct disposal of litigation. Some authorities have discussed the application of these elements to social workers and to psychotherapists [5] and at least one urges that the creation of privileged communication in this new area should be left to the legislature.[6] We think public policy is not so definitely compelling or clear or the area so limited that we should grant testimonial confidentiality by court decision to social workers.

Driscoll argues that because one who commits sexual intercourse with a child necessarily takes indecent liber-

[5] *The Social Worker—Client Relationship and Privileged Communications*, 1965 Wash. U. L. Q. 362; Note, *Confidential Communications to Psychotherapist: A New Testimonial Privilege*, 47 N. W. U. L. Rev. (1952), 384; Note, *A Suggested Privilege for Confidential Communications with Marriage Counsellors*, 106 U. Pa. L. Rev. (1957), 266; LoGatto, *Privileged Communication and the Social Worker*, 8 Catholic Lawyer (1962), 5; *The Psychotherapy and Legal Privilege*, 53 Mass. L. Q. (1968), 307; *Psychotherapeutic Professions and the Law of Privileged Communications*, 10 Wayne L. Rev. (1964), 609; Note, *A State Statute to Provide a Psychotherapist—Patient Privilege*, 4 Harv. J. Leg. (1967), 307; and Guttmacher and Weihofen, *Privileged Communications Between Psychiatrist and Patient*, 28 Ind. L. J. (1952), 32.

[6] LoGatto, *supra*, note 5; 8 Catholic Lawyer, *supra*, at 17.

ties with the privates of a minor and consents to the indecent use of his privates, the crimes of taking indecent liberties and indecent use is an included crime of sexual intercourse with a child. While intercourse may be taking indecent liberties, some indecent liberties are not intercourse. Although one may be charged with a crime and an included crime, he may only be convicted of one and not both. Sec. 939.66, Stats.[7] The acts of fellatio and cunnilingus are not intercourse and it is clear they took place prior to the intercourse. Although acts of sex perversion and intercourse may be proximate in time, the acts are distinct and the continuity in time does not blend the former acts into the latter. Consequently, the acts of fellatio and cunnilingus with a child are not included crimes of sexual intercourse with a child, although all three may constitute indecent liberty or use.

We find no merit in the argument the information was multiplicitous. The facts do not present a series of similar acts which are in reality a continuous course of conduct. But even if we adopted the singular-act view, separate charges may be based upon a single act if it involves violation of several provisions of the statutes. *See* sec. 939.65, Stats.;[8] *State v. Chacon* (1971), 50 Wis. 2d 73, 183 N. W. 2d 84.

Before trial Driscoll moved to prevent the state from cross-examining him as to past convictions. He had been convicted in 1951, some eighteen years prior to the

---

[7] "939.66 **Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; . . ."

[8] "939.65 **Prosecution under more than one section permitted.** If any act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions."

present trial, of contributing to the delinquency of a minor. The court reserved its decision until it reached the end of the state's case, at which time it ruled against Driscoll on the ground that he could prevent any harm from the admission of a single conviction.

On cross-examination the state under authority of sec. 885.19, Stats.,[9] asked Driscoll if he had been previously convicted of a crime. Driscoll admitted he had. By so doing the state was prevented from putting into evidence the nature of the crime; but likewise, because of the nature of the crime, Driscoll could not, without damage to himself on the issue of guilt, explain that the conviction had no relevancy to his truthfulness or veracity. In admitting the evidence, the trial court relied on Rule 303 of the American Law Institute Model Code of Evidence adopted in *Whitty v. State* (1967), 34 Wis. 2d 278, 294, 149 N. W. 2d 557. While *Whitty* did not involve the admissibility of a conviction for impeachment purposes, nevertheless the rationale of *Whitty* of balancing the relevancy of the evidence against prejudice on the guilt issue is applicable.

Rule 303 of the Model Code is not restricted to certain types of evidence but applies to any evidence when the judge in his discretion finds its probative value is outweighed by the risk its admission will have on the fairness of the trial. Here, the admission of a crime which occurred eighteen years before without revealing its nature would have very little prejudicial effect on the issue of guilt. While remoteness alone is not the determining factor of admissibility, it is an element to be taken into consideration. Although sec. 885.19, Stats.,

[9] "885.19 Convict. A person who has been convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining him is not concluded by his answer."

allows evidence of conviction for impeachment purposes, it is not confined to crimes which relate to honesty or veracity. *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 168, 146 N. W. 2d 801; *Nicholas v. State* (1971), 49 Wis. 2d 683, 692, 183 N. W. 2d 11. Consequently, the admissibility under this section is subject to constitutional guarantees requiring a fair trial and due process. All the cases cited by Driscoll on remoteness [10] agree the question of admissibility is one which lies within the sound discretion of the trial court. We think the guidelines adopted in *Whitty* govern the exercise of that discretion and recognize the constitutional problems involved. While another trial court could well have differed in the exercise of its discretion on these facts, we are not prepared to hold there was an abuse of discretion allowing the evidence of this conviction in the record.

*By the Court.*—Judgment and order affirmed.

ROBERT W. HANSEN, J. (*concurring*). This writer agrees with the majority that this court ought not grant testimonial confidentiality to social workers. However, the refusal so to do ought to be based on the ground that the setting of the public policy in this area and in this regard is a part of the legislative function, not the judicial function, under our tripartite form of government. It is for the legislature, not the courts, to determine whether communications between social workers and those they serve or counsel are to be privileged.

[10] *Buel v. State* (1899), 104 Wis. 132, 145, 80 N. W. 78; *Luck v. United States* (D. C. Cir. 1965), 348 Fed. 2d 763; *Gordon v. United States* (D. C. Cir. 1967), 383 Fed. 2d 936; *United States v. Hildreth* (4th Cir. 1967), 387 Fed. 2d 328; *United States v. Allison* (9th Cir. 1969), 414 Fed. 2d 407.