DAVISON, and husband, Plaintiffs-Respondents, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, and another, Defendants-Appellants.

*No. 72–245.   Argued December 1, 1976.—Decided January 6, 1977.*
(Also reported in 248 N. W. 2d 433.)

For the appellants there was a brief by *Richard J. Palmersheim, James L. Thomas* and *Law Offices of Richard J. Palmersheim,* and oral argument by *James L. Thomas,* all of Milwaukee.

For the respondents there was a brief by *Stanley F. Schellinger, James G. Doyle, James A. Baxter* and *Schellinger & Doyle, S. C.,* and oral argument by *Mr. Baxter,* all of Milwaukee.

CONNOR T. HANSEN, J.    The complaint alleges that the hospital negligently permitted a staff physician (Dr. John W. R. Thoma), who it knew or should have known was unqualified and incompetent, to perform a hysterectomy upon Margie Davison; that the hospital negligently failed to bring to the attention of a qualified physician clinical signs of post-operative complications; that the hospital negligently failed to see to it that Margie Davison received competent medical post-operative care; and that the hospital negligently failed to ascertain that the attending staff physician had adopted an inadequate pre-operative diagnosis.    The hospital answered, denying all negligence.

This appeal centers around the discovery activities of the plaintiffs during the pendency of the action.    Sometime prior to November, 1974, the plaintiffs served a subpoena duces tecum upon four staff physician members of the Hospital Tissue Committee, the Hospital Executive Committee, and the Department of Obstetrics and Gynecology.    The subpoena ordered the physicians to produce all notes, records, correspondence, reports or memorandum of the said committees relating to the care and treatment of Margie Davison by Dr. Thoma from July 1, 1970, on.    The plaintiffs also sought to take the depositions of the same four staff physicians, Doctors Erbes, Boyd, Burgess and Kretzschmar.

On November 1, 1974, the trial court, on request of the hospital issued an order commanding the plaintiffs to show cause why the court should not issue a protective order pursuant to sec. 887.12(3), Stats., suppressing the depositions of the four staff physicians and denying dis-

covery of papers and documents set forth in the subpoena on the grounds that such testimony, papers and documents were privileged and irrelevant.

Following a hearing on the order to show cause the trial court determined that it would withhold a ruling on the motion for a protective order until the adjourned depositions were held and an actual refusal to produce the reports was on the record and certified to the circuit court for resolution.

On April 11, 1975, the plaintiffs served a second subpoena duces tecum on the hospital's administrator, Paul Kempe, as custodian of a different and more detailed enumerated series of committee notes, records, recommendations, correspondence, reports, memorandum, minutes and other writings, directing him to produce the same at a deposition to be held on April 22, 1975. Joseph C. Rogers, assistant administrator of the hospital, appeared at the hearing with all of the demanded reports and documents known to be in existence in the hospital files, in a sealed envelope. On the advice of counsel, Rogers refused to produce the documents. Dr. Boyd also appeared at the deposition but refused to answer certain questions relating to the Hospital Tissue Committee activities on the grounds of privilege. The questions involving the production of the documents and depositions of Rogers and Dr. Boyd were certified to the circuit court for disposition.

On May 16, 1975, the plaintiffs brought an order to show cause seeking to resolve the controversy surrounding the privilege asserted by the hospital, and to compel the production of the various committee documents demanded by the April 11, 1975, subpoena for inspection and copying.

The trial court then issued a memorandum decision in which it determined that the privilege asserted by the hospital did not exist under either statutory or common

law. It also denied the motion of the hospital for a protective order as to the first subpoena duces tecum.

On July 21, 1975, the plaintiffs brought on another order to show cause seeking, among other things, to compel the hospital to produce the committee documentation previously subpoenaed on April 11, 1975, for inspection and copying. On the same date, the court issued an order, pursuant to sec. 269.57 (1), Stats., directing the hospital to produce for inspection and copying, the written materials set forth in the subpoena served upon Paul Kempe, the hospital administrator, on April 11, 1975. All previous orders imposing time limitations were vacated and the pretrial order was stayed pending this appeal.

The first subpoena and the April 11, 1975, subpoena served on the hospital administrator demanded the production of somewhat different information. However, for the purpose of this appeal, we do not deem the differences to be significant.

Three issues are presented:

1. Does a statutory testimonial privilege exist, protecting the proceedings and reports of the Hospital Tissue Committee and other similar hospital staff peer review committees from disclosure through discovery devices in civil litigation?

2. Does a common-law testimonial privilege exist, protecting the proceedings and reports of the Hospital Tissue Committee and other similar hospital staff peer review committees from disclosure through discovery devices in civil litigation?

3. If neither statutory nor common-law testimonial privilege exist, should this court, on appeal, create such a privilege?

## STATUTORY PRIVILEGE.

The hospital asserts that a statutory privilege exists, which protects the proceedings and reports of the pro-

ceedings of the Hospital Tissue Committee and other hospital staff peer review committees from discovery in civil litigation.

It is the position of the hospital that sec. 905.02, Stats., together with sec. H24.04(1)(n) of the Wisconsin Administrative Code, operate to grant a privilege to hospital staff peer review committees. Sec. 905.02 reads as follows:

*"905.02 Required reports privileged by statute.* A person, corporation, association, or other organization or entity, either public or private, making a return or report required by law to be made has a privilege to refuse to disclose and to prevent any other person from disclosing the return or report, if provided by law. A public officer or agency to whom a return or report is required by law to be made has a privilege to refuse to disclose the return or report if provided by law. No privilege exists under this section in actions involving false swearing, fraudulent writing, fraud in the return or report, or other failure to comply with the law in question."

Sec. H24.04(1), of the Wisconsin Administrative Code governs the organization and administration of hospitals in Wisconsin. Sec. H24.04(1)(j) requires the establishment of an executive committee; sec. H24.04(1)(k) requires the establishment of a credentials committee; and sec. H24.04(1)(n) requires the establishment of a hospital tissue committee. As set forth in the Code, the functions and responsibilities of the various committees include postoperative: (1) review and analysis of clinical work done by the hospital and the hospital medical staff personnel; (2) consideration of various cases in terms of potential errors in diagnosis and the results of treatment; (3) review, analysis and evaluating of the clinical work of staff members; (4) constructive professional criticism of staff members; and (5) continuing medical education.

The hospital relies upon the language of the Administrative Code pertaining to the hospital tissue committee

to argue that the reports and proceedings of the tissue committee are to remain confidential and that in the terms of sec. 905.02, Stats., this privilege is ". . . provided by law."

Sec. H24.04 (1) (n) states that the hospital tissue committee is required to review and evaluate all surgery performed in the hospital on the basis of an agreement or disagreement among the preoperative, postoperative and pathological diagnoses, and on the acceptability of the procedure undertaken. Sec. H24.04 (1) (n) 1. requires the committee to meet monthly and file a written report of its proceedings to the hospital executive committee. Sec. H24.04 (1) (n) 2., upon which the hospital specifically relies for the privilege, reads :

"2. This committee's work shall include continuing education through such mechanisms as utilization of its findings in the form of hypothetical cases and/or review of cases by category at staff meetings and/or publishing in coded form physicians' standings in the hospital regarding percentage of cases in which normal tissue is involved."

It is the position of the hospital that sec. H24.04 (1) (n) 2. of the Wisconsin Administrative Code, which requires that the committee's findings be in the form of hypothetical cases and in coded form as to physicians, indicates a clear legislative intent that the reports and proceedings of the committee are to remain confidential. Thus, submits the hospital, this expression of intent affords the committee activity the privilege referred to in sec. 905.02, Stats.

Our reading of sec. 905.02, Stats., and related cases, brings us to the opposite conclusion. Sec. 905.02 recognizes a privilege such as the hospital seeks, ". . . if provided by law." The judicial council committee note following sec. 905.02 lists the following statutes, as illustrative of the subject of sec. 905.02: Sec. 48.26—Peace

officer's records concerning children under 18; sec. 48.78 —Records received concerning individuals in licensed child welfare agencies, day care centers and maternity hospitals; sec. 48.93—Adoption proceedings; sec. 71.11—Income and franchise taxes; sec. 143.07—Communicable diseases; sec. 247.081—Reconciliation effort report; and sec. 346.73—Accident reports confidential.

A review of each of the above statutes indicates that in each, the legislature has specifically and unequivocally established a privilege against the disclosure of the specific materials. Such a specific and unequivocal statement of privilege is absent from sec. H24.04(1)(n)2. Although the Administrative Code requires the weekly reports, subsection 2. of sec. H24.04(1)(n) concerns itself merely with the educational aspects of those reports. While that subsection may provide for a limited protection or privilege (*i.e.*, nondisclosure of patient's or physician's name) in the context of an educational setting, it does not grant the overall privilege sought by hospital.

■ This court has consistently strictly interpreted privileges and confidentialities granted by statute. In *State v. Driscoll*, 53 Wis.2d 699, 193 N.W.2d 851 (1972), the defendant therein argued that statements he made to a social worker about sexual relations he had had with his daughter were privileged under sec. 247.081, Stats. Under that section, communications to family court conciliation department personnel or appointed social workers made during reconciliation efforts in pending divorce or separation actions were privileged. This court, in denying the privilege sought, stated at pp. 704, 705:

"Since no action for divorce or legal separation was pending and the conference with the social worker was not at the behest of a family court commissioner, sec. 247.081, Stats., is not applicable. While it is argued this situation has all the earmarks of a situation which calls for testimonial confidentiality, we cannot give the section such a liberal construction as would change the express

language of its scope and applicability. *Lukaszewicz v. Concrete Research, Inc.* (1969), 43 Wis.2d 335, 342, 168 N.W.2d 581."

In *Luedtke v. Shedivy*, 51 Wis.2d 110, 186 N.W.2d 220 (1971), a wife brought an action to recover damages for the wrongful death of her husband who had been killed when his parked vehicle was struck by another car. The county coroner, shortly after the death, had taken a blood sample from the deceased, which, upon analysis, indicated that he was intoxicated. Sec. 979.20 (3), Stats., allowed the coroner to collect and analyze body fluids in order to determine the cause of death. Specifically, however, that section prohibited the use of such test results in any civil action ". . . against the deceased or his estate, . . ."

The defendant in the civil action sought to introduce the test results into evidence. The wife objected on the grounds of the sec. 979.20 (3) "privilege" aspect of those test results. This court, strictly construing the "privilege," stated at pp. 117, 118:

". . . Moreover, even if sec. 979.20 were applicable here, it would not prohibit the admission of the test results because such results are inadmissible in an action 'against the deceased or his estate.' No one in this case has brought an action against the estate of the deceased.

"Appellant points out that the results of the tests are being used as a defense in the action. That is—they are being used against the deceased. This is claimed to be equivalent to a 'civil action against the deceased or his estate.' We do not agree. In no way can the language of sec. 979.20 (3), Stats., be interpreted to mean that affirmative defenses are the same as a 'civil action against the deceased.'"

This court's strict construction of statutorily granted privileges is in accord with the generally expressed attitudes of the commentators advocating a narrowing of the field of privileges (See: McCormick, *Evidence* (2d

ed. hornbook series), p. 156, sec. 77; 8 Wigmore, *Evidence*
(McNaughton rev. 1961), p. 527, sec. 2285), and with
the recent United States Supreme Court expression on
the subject in *United States v. Nixon* (1974), 418 U.S.
683, 94 Sup. Ct. 3090, 41 L. Ed.2d 1039, at pp. 709, 710:

". . . The privileges referred to by the Court are de-
signed to protect weighty and legitimate competing in-
terests. Thus, the Fifth Amendment to the Constitution
provides that no man 'shall be compelled in any criminal
case to be a witness against himself.' And, generally,
an attorney or a priest may not be required to disclose
what has been revealed in professional confidence. These
and other interests are recognized in law by privileges
against forced disclosure, established in the Constitution,
by statute, or at common law. Whatever their origins,
these exceptions to the demand for every man's evidence
are not lightly created nor expansively construed, for
they are in derogation of the search for truth."[2]

The provisions of sec. H24.04(1)(n)2., Wisconsin Ad-
ministrative Code do not unequivocally grant the privilege
which the hospital here seeks. Moreover, the limited
privilege or confidentiality which that section does grant
cannot be expanded or interpreted so as to bring it within
the provisions of sec. 905.02, Stats.

Subsequent to the filing of briefs, the hospital brought
to this court's attention, ch. 187, Laws of 1975, effective
April 3, 1976. That Act created sections 146.37 and
146.38, Stats., relating to civil immunity for persons eval-
uating health care providers and facilities and the con-
fidentiality of information acquired in such reviews.

The effective date of the above statute was April 3,
1976. If the instant controversy had arisen after the
effective date of sec. 146.38, Stats., at least some of the

[2] *See also: Branzburg v. Hayes* (1972), 408 U.S. 665, 688, 92
Sup. Ct. 2646, 33 L. Ed.2d 626; *United States v. Bryan* (1950), 339
U.S. 323, 331, 70 Sup. Ct. 724, 94 L. Ed. 884; *Blackmer v. United
States* (1932), 284 U.S. 421, 438, 52 Sup. Ct. 252, 76 L. Ed. 375.

elements of information sought by the respondents might have been privileged and beyond discovery under the provisions of sec. 905.02.

■ The question of the retroactive effect of sec. 146.38, Stats., has not been addressed by the parties herein. However, the long expressed general rule cited by this court is that statutes granting or rescinding substantive rights will not be given retroactive effect unless such intent was clearly expressed by the legislature. *Feest v. Allis Chalmers Corp.*, 68 Wis.2d 760, 229 N.W.2d 651 (1975) ; *Mosing v. Hagen,* 33 Wis.2d 636, 148 N.W.2d 93 (1967) ; *Bair v. Staats,* 10 Wis.2d 70, 102 N.W.2d 267 (1960) ; *State ex rel. McKenna v. District No. 8,* 243 Wis. 324, 10 N.W.2d 155 (1943) ; *State ex rel. Schmidt v. District No. 2,* 237 Wis. 186, 295 N.W. 36 (1941).

■ The legislature here has expressed no intent that sec. 146.38(3), Stats., should apply retroactively. The question remains, however, as to whether sec. 146.38 involves a substantive right of either the hospital or the plaintiffs. Absent an established privilege, the plaintiffs, on April 11, 1975, were entitled to discovery of the subpoenaed documents under the provisions of sec. 269.57 (1). It is equally clear that on that date the hospital possessed no statutory right of privilege as to those documents.

In the context of this case, where the plaintiffs have initiated and brought to a conclusion all possible efforts to obtain the sought-after documents; where the trial court has issued an order to the hospital, commanding the production of those documents; but where the hospital has caused the temporary delay of the proceedings by bringing this appeal; it cannot be said that the right to discovery has not become vested in the plaintiffs. Viewed in such a light, sec. 146.38, Stats., does affect the substantive rights of the plaintiffs and it cannot be given retroactive effect.

■ We conclude that at the time of the entry of the order appealed from, no statutory right of testimonial privilege protecting the documents in question, from discovery, existed.

### COMMON LAW PRIVILEGE.

The hospital asserts, in its brief, that a common law privilege existed which protected the sought-after documents from discovery, and that under the provisions of art. XIV, sec. 13, Wisconsin Constitution, this court could and should give recognition to such common law right.

Art. XIV, sec. 13, Wisconsin Constitution, reads as follows:

> "*Common law continued in force.* SECTION 13. Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

The common law to which the constitutional provision applies has consistently been defined as the law arising from English court decisions rendered prior to the Revolutionary War. *Coburn v. Harvey*, 18 Wis. 156(*147) (1864); *Estate of Budd*, 11 Wis.2d 248, 105 N.W.2d 358 (1960); *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962); *State v. Esser*, 16 Wis.2d 567, 115 N.W.2d 505 (1962). There is now no question that this court can adopt and change existing common law principles. *Bielski, supra; Esser, supra; Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967); *Garcia v. Hargrove*, 46 Wis. 2d 724, 176 N.W.2d 566 (1970); 1971 Wis. L. Rev., 818–824. But before this court may adopt or change any common law privileges, those privileges must be shown to have existed in the common law. We have been directed

to no authority showing the existence of a common law right or privilege such as is asserted here and none has come to our attention. Neither McCormick, nor Wigmore, in their dissertation on privilege recognize such a common law privilege. We are of the opinion no such common law privilege exists.

Furthermore, the enactment of sec. 905.01, Stats., Wisconsin Rules of Evidence, is an alteration or suspension of the common law within the contemplation of the constitution.

Sec. 905.01 reads:

"905.01 Privileges recognized only as provided. Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:

"(1) Refuse to be a witness; or

"(2) Refuse to disclose any matter; or

"(3) Refuse to produce any object or writing; or

"(4) Prevent another from being a witness or disclosing any matter or producing any object or writing."

Even if there existed a prior common law privilege of the type here asserted by the hospital, unless such privilege was provided by or was inherent or implicit in statutes, or in the rules of the supreme court, or was required by the United States or Wisconsin Constitution at the time the appellant asserted the privilege, this court could not, after the enactment of sec. 905.01, recognize such a privilege.

█ The claimed privilege does not relate to a constitutional guarantee, nor does the privilege arise from statute or supreme court rule. If there did exist a common law privilege, that common law right, at the time of the proceedings below, was not reflected in nor implicit in statute or supreme court rule and was not required by the United States or Wisconsin Constitution. Thus, sec. 905.01, Stats., would preclude its recognition.

## COURT CREATION OF PRIVILEGE.

As a final argument, the hospital suggests that even if a common law or statutory privilege does not exist, this court should, in this case, judicially create such a privilege. Our attention has been directed to *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C. 1970), *affirmed,* 479 Fed.2d 920 (D.C. Cir. 1973), wherein under similar circumstances the federal court held that proceedings and reports of hospital staff review committees were entitled to a qualified privilege on the basis of overwhelming public interest. *See also: Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y. 1971), and *Banks v. Lockheed-Georgia Company,* 53 F.R.D. 283 (N.D. Ga. 1971).

*State v. Driscoll, supra,* 706, sets forth four prerequisites for granting a privilege by quoting with approval, 8 Wigmore, *Evidence,* sec. 2285, p. 527. Those prerequisites are: (1) The communications must originate in a confidence that they will not be disclosed; (2) confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relationship should be one which, in the opinion of the community, ought to be sedulously fostered; (4) the injury which would inure to the relationship by disclosure must be greater than the benefit gained for the correct disposal of litigation. 8 Wigmore, *Evidence, supra,* notes that all four of the above conditions must be present before a privilege is recognized.

Although setting forth the prerequisites for the granting of a privilege, Wigmore does not indicate whether the court or the legislature is the proper body to grant such privilege. McCormick, *supra,* p. 156, observed that "[t]he development of judge-made privileges virtually halted a century ago." 8 Wigmore, *Evidence,* sec. 2286, p. 532, noted that in recent times most new

privileges have been sought through legislation rather than court action.

In *State v. Driscoll, supra,* this court was urged to create a privileged confidential relationship for private and governmental social workers. This court stated at p. 706:

"We are urged to create by case law a privileged confidential relationship for private and governmental social workers. This is possible. . ."

This court cited the four prerequisites set forth by Wigmore and stated further, p. 706:

". . . We think public policy is not so definitely compelling or clear or the area so limited that we should grant testimonial confidentiality by court decision to social workers."

In this case, as in *State v. Driscoll, supra,* the public policy decision to be made is not so clear or so limited as to convince this court that it should grant the confidentiality requested.

Furthermore, the legislature has acted in the passage of sec. 146.38, Stats., purporting to grant the privilege sought here, and thus resolve the conflicting public policy concerns. However, without specifically construing the provisions of sec. 146.38, we have determined that, under the circumstances presented in this case, it is not to have retroactive effect. The fact that the legislature has attempted to resolve the public policy concerns does not make the underlying public policy any more compelling, clear or limited. The action of the legislature subsequent to the commencement of this action does not persuade us that this court should now decide a public policy issue of the character involved here.

Also, there is serious doubt as to whether this court can now grant the privilege sought on a case-by-case basis. If, as the hospital originally asserted, the privilege sought had its basis in common law, it would appear

that sec. 905.01, Stats., precludes its enlargement on a case-by-case basis. The judicial council committee's note following sec. 905.01, states, at 59 Wis.2d R101:

". . . Common law privileges, not originating in the constitution, could not be enlarged on a case by case basis."

In its interpretation of the above language, in the memorandum opinion denying the hospital's motion to suppress discovery, the trial court stated:

"Finally, and with more difficulty, we approach the question of whether the Defendants have a privilage [sic] which should be recognized under the common law. It is true that Section 905.01 seems to indicate that as common law privileges are only recognized if they stem from the Constitution of either the United States or Wisconsin. 905.01 is written as a general rule of no privilege, with exceptions to the general rule if such exceptions are inherent or implicit in a statute, the rules adopted by our Supreme Court, or required by the United States or Wisconsin Constitution. Significantly, there is no mention of any common law privilege. This may well lead one to conclude that such privileges no longer exist. However, the Judicial Council Committee's notes do say that common law privileges not [sic] or emanating from the Constitution could not be enlarged on a case by case basis. This seems, by implication, to indicate that there are common law privileges. My interpretation of this is that common law privileges still exist but only if they have been codified by a statute, Court rule, or required under the Constitution. For example, the attorney-client privilege, well recognized at common law, is codified in the Wisconsin Rules of Evidence. Under this interpretation, if there were any common law privileges available and applicable to these facts they are no longer available under 905.01 and none can be made available on a case by case basis. . . ."

We believe the interpretaion of the trial court, insofar as it pertains to common law bases for privileges is correct. If the sought after privilege arises from common law then it must be adopted by either supreme court rule

or by statute, and not on a case-by-case basis. Any indication to the contrary drawn from the language of *State v. Driscoll, supra,* 706, is negated by the fact that that case was decided before the effective date of sec. 905.01, Stats.

Since the privilege sought by the hospital has no basis in common law, the creation of such a privilege could only be accomplished by legislative enactment or under the provisions of sec. 251.18, Stats., after public hearing, and in the same manner as was followed in the promulgation of the Wisconsin Rules of Evidence. That procedure was utilized to re-enact previously existing privileges as in secs. 905.03–905.06; to reassert privileges already existing at law, sec. 905.02; and to establish specific new privileges, secs. 905.07–905.10; and is the proper procedure to be utilized in the present case.

■ We decline to judicially create the privilege here sought by the hospital.

*By the Court.*—Order affirmed.