STATE OF CONNECTICUT *v.* ROBERT LIZOTTE
(12442)

PETERS, C. J., HEALEY, SANTANIELLO, CALLAHAN and M. HENNESSEY, Js.

Argued April 29—decision released August 5, 1986

*Kevin C. Connors,* special public defender, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *Warren Maxwell,* assistant state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

SANTANIELLO, J. On November 23, 1983, the defendant, Robert Lizotte, was convicted of sexual assault

in the second degree in violation of General Statutes § 53a-71 (a) (1), sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and risk of injury to a minor in violation of General Statutes § 53-21. He subsequently was sentenced to a total effective prison term of ten years, suspended after six years and five years probation. He claims on appeal that the trial court erred in allowing a battered women's counselor to testify as to certain communications between his wife and the counselor because such communications were privileged against disclosure by Public Acts 1983, No. 83-429, subsequently codified as General Statutes § 52-146k.[1] He also claims that the

---

[1] "[General Statutes] Sec. 52-146k. PRIVILEGED COMMUNICATIONS BETWEEN BATTERED WOMEN'S OR SEXUAL ASSAULT COUNSELOR AND VICTIM. (a) As used in this section:

"(1) 'Battered women's center' means any office, shelter, host home or center offering assistance to battered women through crisis intervention, emergency shelter referral and medical and legal advocacy, and which meets the department of human resources criteria of service provision for such centers.

"(2) 'Battered women's counselor' means any person engaged in a battered women's center (A) who has undergone a minimum of twenty hours of training which shall include, but not be limited to, the dynamics of battering, crisis intervention, communication skills, working with diverse populations, an overview of the state criminal justice system and information about state and community resources for battered women, (B) who is certified as a counselor by the battered women's center which provided such training, (C) who is under the control of a direct service supervisor of a battered women's center, and (D) whose primary purpose is the rendering of advice, counsel and assistance to, and the advocacy of the cause of, battered women.

"(3) 'Confidential communication' means information transmitted between a victim of a battering or a sexual assault and a battered women's counselor or sexual assault counselor in the course of that relationship and in confidence by a means which, so far as the victim is aware, does not disclose the information to a third person other than any person who is present to further the interests of the victim in the consultation or any person to whom disclosure is reasonably necessary for the transmission of the information or for the accomplishment of the purposes for which such counselor is consulted, and includes all information received by, and any advice, report or working paper given or made by, such counselor in the course of the relationship with the victim.

trial court erred in refusing to allow into evidence various school records relating to the credibility of one of the state's witnesses. We find no error.

The jury could reasonably have found the following facts. On December 18, 1982, the ten year old victim and her mother went to the defendant's home in Hartford. At the time, the defendant resided with his wife, Nicole Lizotte, and their six year old daughter, Lisa, on the first floor of his three family home. The victim's mother left the victim with the Lizottes while she visited a friend. That evening, the defendant attended a small party in the basement apartment, rented by Robert and Lynn Willard. During the party, the victim stayed in the Lizottes' apartment with Lisa Lizotte and

"(4) 'Rape crisis center' means any office, institution or center offering assistance to victims of sexual assault and their families through crisis intervention, medical and legal advocacy and follow-up counseling and which meets the department of health services criteria of service provision for such centers.

"(5) 'Sexual assault counselor' means any person engaged in a rape crisis center who (A) has undergone a minimum of twenty hours of training which shall include, but not be limited to, the dynamics of sexual assault and incest, crisis intervention, communication skills, working with diverse populations, an overview of the state criminal justice system, information about hospital and medical systems and information about state and community resources for sexual assault victims, (B) is certified as a counselor by the sexual assault center which has provided such training, (C) is under the control of a direct services supervisor of a rape crisis center, and (D) whose primary purpose is the rendering of advice, counseling and assistance to, and the advocacy of the cause of, victims of sexual assault.

"(6) 'Victim' means any person who consults a battered women's counselor or a sexual assault counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused by a battering or a sexual assault.

"(b) A battered women's counselor or a sexual assault counselor shall not disclose any confidential communications made to such counselor by a victim in any civil or criminal case or proceeding or in any legislative or administrative proceeding unless the victim making the confidential communications waives the privilege, provided under no circumstances shall the location of the battered women's center or rape crisis center or the identity of the battered women's counselor or sexual assault counselor be disclosed in any civil or criminal proceeding. . . ."

Stephen Willard, Robert Willard's younger brother. At some point during the evening, the defendant went upstairs and directed the victim to go into his daughter's bedroom, where he sexually assaulted her. As the assault was taking place, Stephen Willard walked by the bedroom and observed what the defendant was doing to the victim. Later that night, the defendant went into his daughter's bedroom where the victim was sleeping, removed her from bed, and took her into the kitchen, where he again sexually assaulted her.

Sometime after the first incident in the bedroom, Stephen Willard told his sister-in-law, Lynn Willard, and Nicole Lizotte what he had seen. The next day, the victim's mother had a conversation with both Lynn Willard and Nicole Lizotte and, upon returning home with the victim, discussed the incident with her. On January 7, 1983, the victim gave a statement to the Hartford police concerning the defendant's actions on the night in question.

I

The defendant first claims that the trial court erred in admitting the testimony of his wife's caseworker.[2] At trial, the defendant called his wife to testify as an alibi witness. Nicole Lizotte testified that on December 18, 1982, the defendant was out of the house during the early evening and did not return home until 10 p.m. After his return, according to Nicole Lizotte, they went out to dinner, then to a bar, and did not come back to their apartment until late that night. On cross-examination, Nicole Lizotte testified that she had learned about the victim's claim approximately one week after the alleged incident and had discussed the

---

[2] The state argues that the defendant does not have standing to raise this issue on appeal, because the privilege, if it existed, belonged to his wife. Because we find that the privilege does not extend to the communications in this case, we do not address this issue.

claim only with the victim's mother and Lynn Willard. She further testified that at one time she had been afraid of her husband and that he had physically beaten her. On redirect examination, however, she stated that as of December 18, 1982, she had been getting along well with the defendant and was no longer afraid of him.

In its rebuttal case, the state offered the testimony of a counselor at a crisis intervention support unit to impeach Nicole Lizotte's credibility. Prior to the counselor's testimony, Nicole Lizotte objected to the introduction of the testimony on the ground that any communications made to the counselor were privileged under General Statutes § 52-146k.[3] On voir dire examination, the counselor stated that she had been

---

[3] We recognize that subsequent to the trial court's decision, the legislature enacted Public Acts 1985, No. 85-112, effective October 1, 1985, amending General Statutes § 52-146k. Public Acts 1985, No. 85-112, states in part that "ON OR AFTER OCTOBER 1, 1983, A battered women's counselor or a sexual assault counselor shall not disclose any confidential communications made to such counselor AT ANY TIME by a victim in any civil or criminal case . . . . ANY REQUEST MADE ON OR AFTER OCTOBER 1, 1983, BY THE DEFENDANT OR STATE FOR SUCH CONFIDENTIAL COMMUNICATIONS SHALL BE SUBJECT TO PROVISIONS OF THIS SUBSECTION."

Although it is possible for the legislature to enact retroactive legislation affecting a trial court's judgment, provided an appeal to a higher court is pending; *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 572-73, 440 A.2d 220 (1981); we have consistently held that where the enactment effects substantive, rather than procedural changes, the trial court's decision is final, notwithstanding the amendment. *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 301, 309-10, 472 A.2d 316 (1984); *Schenck* v. *Pelkey,* 176 Conn. 245, 251, 405 A.2d 665 (1978); cf. *Enfield Federal Savings & Loan Assn.* v. *Bissell,* supra, 573 n.2.

Public Acts 1985, No. 85-112, substantially expanded the battered women's counselor/sexual assault counselor-client privilege to apply to all communications between a counselor and a client whenever made. In enacting Public Acts 1985, No. 85-112, the legislature effected a substantive, rather than procedural, change in the law. The amendment thus does not affect the trial court's ruling and we apply the law as it was in existence at the time the trial court made its determination.

Nicole Lizotte's caseworker from September, 1982, until the date of the trial. She testified that between September, 1982, and January, 1983, Nicole Lizotte had expressed fear that her husband would physically beat her and had inquired about the possibilities of being placed in a shelter. She further testified that at some point between December 25, 1982, and January 4, 1983, Nicole Lizotte had told her about an incident involving the defendant and the victim. The trial court ruled that the statute did not apply to communications made prior to the statute's effective date, October 1, 1983, and because the statements were made prior to this date, allowed the counselor to testify.

The defendant claims that § 52-146k was applicable at the time of the trial and that the trial court should have refused to allow the counselor to testify. Section 52-146k (b) provides in part that "[a] battered women's counselor or a sexual assault counselor shall not disclose any confidential communications made to such counselor by a victim in any civil or criminal case or proceeding or in any legislative or administrative proceeding unless the victim making the confidential communications waives the privilege . . . ." The defendant reasons that because § 52-146k (b) prohibits a battered women's counselor from disclosing communications, the critical time for determining the applicability of the statute is when the communications are sought to be disclosed, not when the communications are originally made. Because the communications made by Nicole Lizotte were sought to be disclosed at trial, on November 18, 1983, the defendant claims the statute was applicable, and thus should have prevented the counselor from testifying.

We cannot agree with the defendant's interpretation of § 52-146k (b) that the legislative intent was to prohibit the disclosure of protected communications

regardless of when they were made. The legislature, in enacting § 52-146k, sought to create a privilege, and in so doing, focused on the communications themselves, not when they were sought to be disclosed. Prior to the statute, communications between a battered women's counselor and a victim were not privileged. As we stated in *In re Robert H.*, 199 Conn. 693, 703, 509 A.2d 475 (1986), "[t]he obvious intent and dominant purpose of this statute is to grant a privilege to confidential communications between a sexual assault counselor or a battered women's counselor and a victim." A close examination of the legislative history supports this view of the statute's purpose. In the House debate over the enactment of § 52-146k, Representative Pauline Kezer stated that "this bill *extends the privilege* that now exists to psychiatrists, clergy, to very narrowly defined counselors who work in battered [women's] shelters and rape crisis centers . . . . [T]he bill has been carefully enough drafted, and tightly enough drawn so that we are *extending a privilege.*" (Emphasis added.) 26 H. R. Proc., Pt. 15, 1983 Sess., pp. 5284–85. If the focus of the statute is on the underlying communications and not, as the defendant contends, on the ultimate disclosure of the communications, then the statute only protects communications made after its effective date, October 1, 1983. To exclude communications made prior to this date, would be, in effect, to apply the statute retroactively.

General Statutes § 55-3 states: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." While we have noted the continued vitality and utility of the principle that procedural statutes will be applied retroactively absent contrary legislative intent; *State* v. *Paradise*, 189 Conn.

346, 351, 456 A.2d 305 (1983); we consistently have expressed reluctance to construe statutes retroactively where the statutes affect substantial changes in the law, unless the legislative intent clearly and unequivocally appears otherwise. *State* v. *Paradise,* supra, 350–51; *Hunter* v. *Hunter,* 177 Conn. 327, 331, 416 A.2d 1201 (1979); *American Masons' Supply Co.* v. *F. W. Brown Co.,* 174 Conn. 219, 222–23, 384 A.2d 378 (1978); *East Village Associates, Inc.* v. *Monroe,* 173 Conn. 328, 332, 377 A.2d 1092 (1977); *State ex rel. Rundbaken* v. *Watrous,* 135 Conn. 638, 648, 68 A.2d 289 (1949). "The test of whether a statute is to apply retroactively, absent an express legislative intent, 'is not a purely mechanical one' and even if it is a procedural statute, which ordinarily will be applied retroactively without a legislative imperative to the contrary, 'it will not be applied retroactively if considerations of good sense and justice dictate that it not be so applied.' . . . *Carvette* v. *Marion Power Shovel Co.,* 157 Conn. 92, 96, 249 A.2d 58 [1968]." (Citations omitted.) *Americal Masons' Supply Co.* v. *F. W. Brown Co.,* supra, 223. In *Sherry H.* v. *Probate Court,* 177 Conn. 93, 411 A.2d 931 (1979), this court considered whether a statute that forbids the release of information about a genetic parent without that parent's consent applied retroactively to an action in which an adopted person sought the identity of her genetic mother. We reasoned that when a statute effected "a substantial change in the law" and created a completely different scheme, the rule precluding retroactive application applies, even if the statute is characterized as "merely procedural." Id., 101–102.

In this case, as in *Sherry H.* v. *Probate Court,* supra, the legislature has effected a substantial change in the law by establishing a privilege as to communications between a battered women's counselor and a victim. Absent clear and unequivocal legislative intent,

§ 52-146k should not be applied retroactively.[4] Nowhere in the statute is there mention that the privilege extends to communications made prior to the effective date of the statute. See *State* v. *Paradise,* supra, 353. Moreover, an examination of the legislative history does not reveal any intent that the statute have retroactive effect. We, therefore, will not apply this statute retroactively.

In the present case, communications between Nicole Lizotte and her counselor were made between September, 1982, and January, 1983. General Statutes § 52-146k, however, did not become effective until October 1, 1983. Because these communications made prior to the statute's effective date were not privileged, and because the statute does not apply retroactively to encompass them, we hold that the trial court did not err in permitting the counselor to testify.

## II

The defendant next claims that the trial court erred in refusing to allow into evidence certain school records of Stephen Willard. At trial, the state called Willard as a witness to testify on what he had observed on December 18, 1982. In an attempt to impeach his credibility, the defendant subpoenaed Willard's school records and offered into evidence four documents relating

---

[4] We recognize that some jurisdictions have considered privileged communication statutes to be procedural rules of evidence and have applied them retroactively. See *Rom* v. *Calhoun,* 227 Minn. 143, 145–46, 34 N.W.2d 359 (1948); *Mattison* v. *Poulen,* 134 Vt. 158, 160–61, 353 A.2d 327 (1976); cf. *State ex rel. Leas in Interest of O'Neil,* 303 N.W.2d 414, 419 (Iowa 1981); see generally Sutherland, Statutory Construction (4th Ed. Sands) §§ 41.09, 67.07. Other jurisdictions have held that statutes relating to privileged communications affect the substantive rights of the parties and have not applied them retroactively. See *Davison* v. *St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190, 200, 248 N.W.2d 433 (1977); cf. *Woelfling* v. *Great-West Life Assurance Co.,* 30 Ohio App. 2d 211, 220, 285 N.E.2d 61 (1972). Because of the reasoning articulated in our decision, we need not draw a distinction in this case.

to his school performance. After examining these documents, the trial court ruled that three of the documents had little probative value and were cumulative, and refused to admit them into evidence. The trial court, however, allowed one document, with the exception of its last sentence, into evidence.

Our rules of practice make it clear that counsel must object to a ruling of evidence, state the grounds upon which objection is made, and take exception to the ruling to preserve the grounds for appeal. Practice Book § 288. These requirements are not simply formalities. *State* v. *Rogers,* 199 Conn. 453, 461, 508 A.2d 11 (1986). We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection and exception. *State* v. *Braman,* 191 Conn. 670, 684, 469 A.2d 760 (1983), quoting *State* v. *Hoffler,* 174 Conn. 452, 461, 389 A.2d 1257 (1978); see *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973).

In examining the record, we find that after the trial court made its ruling as to the admissibility of the documents, the defendant did not take exception. Because of this failure to comply with the rules of practice, the defendant did not properly preserve his claim for appeal; nor has he asserted that the claim is reviewable under *Evans.* Therefore, we decline to address the merits of the claim. Practice Book § 3063;[5] see *State* v. *Miller,* 186 Conn. 654, 672, 443 A.2d 906 (1982).

There is no error.

In this opinion the other justices concurred.

---

[5] Practice Book § 3063 provides: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."