[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is a foreclosure arising out of a mortgage from the defendant Define (hereafter "Define") to the Dime Real Estate Services Connecticut, Inc. on August 18, 1986. On the same date, the Dime Real Estate Services Connecticut, Inc. assigned its interest in and to the mortgage deed and note to The Dime Savings Bank of New York, FSB, a/k/a Dime Savings Bank of New York, FSB. On December 19, 1986, The Dime Savings Bank, FSB a/k/a et al. assigned its interests in the note and mortgage deed to Uptown Federal Savings and Loan Association, the plaintiff herein which seeks a foreclosure of mortgage, costs, counsel fees, possession of the premises and a deficiency judgment. (The usual "such other equitable relief as is required" was also claimed.) Credible evidence was offered to prove that the loan has been in default since November of 1988, and the court finds that there is due and payable thereon the sum of one hundred fifty-four thousand and eight hundred eighty-five dollars and nineteen ($154,885.19) cents. CT Page 10182
The fair market value of the premises as of August 25, 1993 was found to be one hundred twenty thousand ($120,000) dollars allocated at seventy-five thousand ($75,000) dollars to the improvements and forty-five thousand ($45,000) dollars to the land. Define has pleaded as a special defense that she rescinded the transaction, that the Dime, et al. did not respond and that the mortgage is not enforceable. She also filed a counterclaim in which she alleged that there are substantial material violations of the Truth-in-Lending Act, Title 15, U.S.C. § 1601 et seq., which are apparent upon the face of those documents and rescission which under Sec. 36-407 (j)(1) renders the transaction unenforceable.
Define herself testified and seemed to have little comprehension of the entire transaction with the exception of the mortgage (it all went to pay prior encumbrances); that she did not receive any proceeds therefrom; that she lived in the house for some forty-five (45) years; that she recognized an owner-occupant certification that she conveyed the property which she obtained from the defendant, MRF Corp., by a quitclaim deed on August 22, 1986 to M.R.I. Corp. on August 22, 1986; that she rescinded the transaction; and, that she did not know what the truth-in-lending violations were. The order of recording of the relevant conveyances herein in the Land Records of the City of Danbury, assignments excepted, was:
 1) quitclaim deed from M.R.I. Corp. to Define dated and recorded on August 22, 1986 in volume 779, page 763 of the Danbury Land Records;
 2) mortgage deed from Define to Dime Real Estate Services — Connecticut, Inc. dated and recorded on August 22, 1986 in volume 799, page 764 of the Danbury Land Records; and,
 3) quitclaim deed from Define to M.R.I., Inc. dated and recorded on August 22, 1986 in volume 799, page 775 of the Danbury Land Records.
Define in her post-trial memorandum advances three substantive challenges which she apparently believes she has proven. That belief is seriously flawed. Those three substantive challenges will be addressed herein. CT Page 10183
The first of these speaks to whether or not Connecticut law governs this transaction. Define argues that there remains a question as to whether or not Dime Real Estate Services — Connecticut, Inc. (the assignor of the promissory note and mortgage) is a "federally chartered institution" which would bring the parties within the federal law, i.e., the Federal Truth-in-Lending Act ("TILA"). Conversely, the plaintiff (hereafter "Bank") argues that Define omitted in her disclosure of defense and in her answer to the plaintiff's complaint any allegation that the Bank was not a federally chartered institution, and is therefore foreclosed from raising that issue now. Sec. 164 of the Practice Book provides in part that "[n]o facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged."
In United States Trust Co. of New York v. DiGhello,179 Conn. 246, 247-250, the defendant appealed the denial of a motion to open the judgment so that it could file a special defense attacking the corporate capacity of the plaintiff to maintain a foreclosure action. In affirming the lower court's denial of the defendant's motion, the court stated that no challenge to the capacity of either the original or the present plaintiff to bring this foreclosure action was raised at any point in the proceedings below. To reiterate, Sec. 164 provides that any claimed illegality not apparent on the face of the pleadings must be specially pleaded. It is therefore patently clear that an attack on the corporate capacity of a plaintiff to sue must be raised by way of special defense. That court continued by stating that to allow the defendant now to raise a defense of a lack of corporate capacity, which was admittedly available to the defendant or to its predecessors from the inception of this action, and which should have been raised byway of special defense prior to the entry of the final judgment, is in the posture of this case inappropriate. See also Junior Investors, Inc. v. Ridgefield Lakes, Inc., 18 Conn. Sup. 170 (a plea in abatement cannot be used to attack the corporate capacity of a plaintiff to sue, but must be specially pleaded in an answer); Menley James Laboratories, Ltd. v. Mott's Super Markets, Inc., 26 Conn. Sup. 434, (a claim that the plaintiff lacked the corporate capacity to sue because it was a foreign corporation CT Page 10184 transacting business in Connecticut without a certificate of authority should not be raised by a plea in abatement but by a special defense). Define's answer reflects no allegation that the Bank is not a federally chartered institution so that Connecticut law would govern the present dispute. Consequently, Define cannot now interpose this defense. Therefore, federal law was properly applied to the instant action.
Define's second theory of defense, which is also set forth in her counterclaim, argues that upon rescission, the Bank was required to tender a release of the mortgage within twenty (20) days, and that failure renders the mortgage void. She cites Sec. 36-407 (j)(1) of the General Statutes as authority for that proposition. That statute reads that:
 When an obligor exercises his right to rescind under Section 125 of the Consumer Credit Protection Act. . ., he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within twenty days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this subsection and Section 125 of the Consumer Credit Protection Act . . ., the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within twenty days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures described by this subdivision shall apply except when otherwise ordered by a CT Page 10185 court.
However, the language contained in subsection (j)(3) must be read in conjunction with the former subsection. That subsection provides:
 An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the information and forms required under this section and Section 125 of the Consumer Credit Protection Act . . ., or any other disclosures required under this chapter have not been delivered to the obligor, except that if (A) the commissioner institutes a proceeding to enforce the provisions of this section, or Section 125 of the Consumer Credit Protection Act . . ., made a part of this chapter as provided in section 36-393b, within three years after the date of consummation of the transaction, (B) the commissioner finds a violation of this subsection or Section 125 of the Consumer Credit Protection Act . . ., and (C) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.
The Bank argues in its trial memorandum that Define's right of rescission expired when she transferred the property to the Mutual Realty Investment Corp. In a ruling on the instant plaintiff's previous motion for summary judgment filed on October 23, 1992, this court stated that "[i]n Connecticut, where a federally chartered institution is the creditor, it has been held that only the Federal Act should be applied to the case," citing Hartford Federal Savings Loan Assn. v. Green, 36 Conn. Sup. 506, 511-512.
Section 125(f) of TILA (15 U.S.C. § 1635 (f) provides in part: CT Page 10186
 An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor. . . .
12 C.F.R. § 226.23 (Regulation Z) also provides in pertinent part:
 The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. . . .
This particular transaction was consummated on August 18, 1986, the date Define executed the mortgage. On August 7, 1989, by sending a letter invoking her right to rescind, she exercised her right of rescission. However, on August 22, 1986, she conveyed the property to Mutual Realty. Under state and federal authority, Define's right to rescind lapsed when she transferred her entire interest in the property. Once Define's right to rescission lapsed upon conveyance of the property, the Bank was no longer burdened by the obligations prescribed in General Statutes, Sec. 36-407(j)(1), and the instant mortgage transaction is entitled to force and effect.
Define continues her argument in defense by reciting that no sale ever took place and that no consideration changed hands. However, she has offered no evidence, much less credible evidence, regarding this assertion, and the court will republish its former opinion[1] regarding this conveyance. She once again postulates that the note in question charged interest based upon a rate over a specified index. She argues that no evidence of the index was presented and that based on the evidence submitted to the court, the court would not be CT Page 10187 able to calculate the interest claimed due. Therefore, the plaintiff did not prove the amount due on its note.
"`Our rules of practice make it clear that counsel must object to a ruling of evidence, state the grounds upon which objection is made, and take exception to the ruling to preserve the grounds for appeal.'" Budlong v. Nadeau,30 Conn. App. 61, 63, quoting State v. Lizotte, 200 Conn. 734, 742A, Practice Book, Sec. 288.
In the present case, because the accuracy of the numerical disclosures presented to the court was not challenged by the defendant by way of objection, the testimony is deemed to be accurate and supportive of the court's finding upon the debt. A judgment of strict foreclosure may enter for the Bank on its complaint and judgment may also enter for the Bank on the defendant's counterclaim. Counsel is ordered to reclaim its motion for foreclosure to set the law days within the next thirty (30) days.
Moraghan, J.